In re the MARRIAGE OF Henry B. Wallace and Betty J. WALLACE.

Upon the Petition of Henry B. Wallace, Petitioner-Cross-Appellant,

and concerning Betty J. Wallace, Respondent-Appellant.

No. 2–64799.

Court of Appeals of Iowa.

Nov. 24, 1981.

Ross H. Sidney, Robert C. Thomson and John Warner of Grefe & Sidney, Des Moines, for respondent-appellant.

David W. Belin, Dennis W. Johnson and Roger T. Stetson of Belin, Harris, Helmick & Heartney, Des Moines, for petitioner-cross-appellant.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, CARTER, and JOHNSON, JJ.

OXBERGER, Chief Judge.

The respondent wife appeals from the division of property in the trial court's decree of dissolution, and alleges that the trial court should have recused itself and that the trial court should have reopened the case for the receipt of additional evidence. The petitioner cross-appeals. We affirm.

The parties were married on November 6, 1963. This was the husband's second marriage, and the wife's fifth marriage and third husband. Both parties had children from their former marriages, but no children were born from this marriage. The wife was a secretary-receptionist prior to the marriage and lived very modestly with her children. The husband was an executive prior to the marriage, owned substan-

tial property, and came from a prominent family. Prior to the marriage, the parties lived together, during which time the husband supported the wife and her children and paid off her debts. The wife stopped working in 1961 and has not worked during the marriage. The husband worked until 1974, and has not worked since then. At the time of the marriage, the husband's net worth was approximately $229,520, consisting of Pioneer stock. The net worth of the parties has increased dramatically during the marriage, not due to any effort on the part of either party, but due to inheritance of Pioneer stock from the husband's father, gifts of stock from his mother, and appreciation in value of the stock. The net worth of the husband at the time of trial was approximately $15,000,000. The wife's net worth was approximately $750,000, substantially all of which is due to gifts from the husband and the husband's mother. The husband has also made gifts to members of the wife's family. Income from investments received by each party is substantial, approximately $235,000 to $500,000 annually for the husband, and $43,000 annually for the wife. The parties have lived a life-style commensurate with their wealth.

In 1975 the wife underwent a double mastectomy, due to cancer. She has had several surgeries and will have to undergo more surgery in the future. The cost of the surgery, past and future, is primarily covered by insurance. This surgery has not shortened her life expectancy.

The trial court found that the wife needs a net income of a minimum of $6000 per month to continue the life-style to which she has become accustomed. The trial court also found that an equal division of the property would not be equitable and would not be supported by Iowa case law.

The trial court awarded the wife property worth $785,000, which she holds in her own name, the Ashworth Road house, worth $275,000, personal property in the home worth $50,000, the Silver Sands condominium worth $125,000, and her other personal property and three vehicles, with a total value of $1,300,000.00. The trial court

awarded her an additional cash settlement of $1,000,000.00, and attorney fees of $25,000.00. Thus her total assets would be $2,300,000. Petitioner was awarded the balance of his assets, including certain personal property.

The trial court did not consider as a marital asset for division the possibility that the husband might eventually inherit a substantial sum from his elderly mother's estate of approximately $15,000,000.

## I. Scope of Review

■ Our review is de novo. Iowa R.App.P. 4. The court gives weight to the fact findings of the trial court but is not bound by them. Iowa R.App.P. 14(f)(7).

## II. Motion to Recuse

■ The wife argues that the trial court erred by not recusing himself after exhibiting bias. We disagree. Although certain words used by the court were inappropriate, they reveal no bias or prejudice in the context of the proceedings, and the motion for recusement was therefore properly denied.

## III. Potential Inheritance of the Husband

■ The wife argues that the trial court erred by failing to consider the husband's future inheritance from his mother to be an asset which should be considered when making the property division.

We do not decide whether the court may consider potential inheritance as a factor in making property distributions in dissolution cases since the husband's uncontradicted testimony is that he is to receive no inheritance from his mother. Under a codicil to his mother's will, such inheritance is to be given to charities he has designated.

## IV. Applicability of Section 598.21, The Code 1981

■ It is not necessary for this court to determine whether Section 598.21, The Code 1981, which became effective on July 1, 1980, is procedural or substantive since it came into effect after the close of this case and after the decree of the trial court and therefore does not control the outcome of the matter before us. *In re Marriage of Callenius*, 309 N.W.2d 510 (Iowa 1981). In any event, the crucial issue before us is whether the distribution of property in the particular circumstances of this case was equitable, this being the ultimate test both before and after amendment of § 598.21(2) by the 1980 legislature. *Schantz v. Schantz*, 163 N.W.2d 398 (Iowa 1968).

## V. The Property Division

■ In resolving the troublesome problems inherent in effecting a distribution of property in dissolution cases, many factors must be considered. Determination as to what is equitable is dependent upon the facts of each case, precedents having relatively little value as guides for the resolution of problems in a situation which may be quite unique. *In re Marriage of Romig*, 207 N.W.2d 780 (Iowa 1973).

■ A division of the parties' assets in dissolution of marriage proceedings based upon either a one-third share to one party or the other or an equal division, or any other mathematically precise formula is not statutorily sanctioned. That which is determinative is that which would constitute an equitable and just award under the circumstances. *Locke v. Locke*, 246 N.W.2d 246, 251 (Iowa 1976). Among the factors to be considered are the respective resources at the disposal of the parties, the length of time they have lived together, the contributions and sacrifices made by each of them toward the acquisition of the property during their marriage, the sources of the property, the needs of each of the parties, the social position and living standards of the parties both before and during the marriage, the earning capacity of each of them, their life expectancies at the time of the dissolution, the physical and mental health of each of them at the time of the dissolution, and such other factors as may reasonably enter into the calculation. With the general principles in mind, we now move to our specific problem in this case—gift and inherited property.

■ Ordinarily, if a marriage lasts a very short time, the claim of either party to

the property owned by the other prior to the marriage or acquired by gift or inheritance during the brief duration of the marriage is minimal at best. *See In re Marriage of Steenhoek*, 305 N.W.2d 448 (Iowa 1981) (5-year marriage; court gave husband credit for property he brought into the marriage, some of which was inherited); *In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1979) (court stated it would have made a larger award but for the brevity of the marriage); *Arnold v. Arnold*, 257 Iowa 429, 133 N.W.2d 53, 60 (1965) (where the court has made an approximately equal division of the marital property, there has usually been an accumulation of property due to the joint efforts of both parties for a considerable number of years); *Buseman v. Buseman*, 299 N.W.2d 807 (S.D.1980) (Henderson, J., concurring in part and dissenting in part); *Morse v. Morse*, 174 Mont. 571, 571 P.2d 1147 (1977) (Harrison, J., concurring in part and dissenting in part.) If there were wide disparities between the assets of the parties at the time of the marriage, or if one of the parties were the recipient of a substantial gift or inheritance, the length of the marriage is a major factor in determining what the respective rights of the parties with respect to such property are at the time of its dissolution. Our obligation to respect and give effect to the wishes of those who convey gifts and bequeath inheritances demands of us that those wishes not be rendered nugatory by the mere fact that the intended recipient happens to be married. *See In re Marriage of Beeh*, 214 N.W.2d 170 (Iowa 1974).

On the other hand, as time goes on, the benefits of such property are enjoyed by the married couple; it is both natural and proper for the expectations of the other spouse to rise accordingly. A sudden substantial rise in the couple's standard of living made possible by a gift or inheritance to the husband or the wife will naturally and reasonably lead the other spouse to anticipate that that standard of living will be maintained, particularly if it is sustained over a lengthy period of time. Changes in habit, in dress, in associates and friends, in manners, in leisure activities, in work or study aspirations—in short, in one's entire life-style—can be brought about by significant improvements in one's access to substantial financial resources. With time such changes become ever more deeply ingrained, and eventually it becomes virtually impossible to return to a world long since renounced and forgotten. *See In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1979) (court considered life-style to which wife had become accustomed as a factor in making property division); *Otis v. Otis*, 299 N.W.2d 114 (Minn.1980) (Otis, J., dissenting; wife entitled to support which will maintain her at standard of living she enjoyed at time of dissolution.

On the other hand, it cannot be said that the partner who has benefited from the other's inheritance or other property necessarily has a claim to half of all that property or to any other mathematically certain portion of it, even after a great many years. If it would take half of that property to maintain a reasonably close semblance of the style of life to which they have both become accustomed, then the court would be justified in ordering such an even division of available assets. But if the total assets are so great as to enable each partner to continue to live the same life-style with something less than half of the total, then the division should be made so as to provide for that end without depriving the original recipient of the property of any more than is necessary to achieve it. *See In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1979) (value of husband's closely held stock $5.6 million prior to marriage; wife awarded $140,000; court considered life-style to which wife had become accustomed); *Locke v. Locke*, 246 N.W.2d 246 (Iowa 1976) (division of property based on either a one-third or one-half share to the wife is not statutorily sanctioned); *In re Marriage of Beeh*, 214 N.W.2d 170 (Iowa 1974) (wife not necessarily entitled to one-half of marital property, most of which came from husband's parents as gifts.)

With respect to real property and tangible personal property, it is necessary to make a number of distinctions, and it is most difficult to draw hard-and-fast lines.

Nonetheless, it is not impossible to discern certain patterns in the cases and to articulate certain principles that may be applied in cases of this sort. *See In re Marriage of Callenius*, 309 N.W.2d 510 (Iowa 1981); *Locke v. Locke*, 246 N.W.2d 246 (Iowa 1976) (the question is always what is just and equitable to both parties, considering the circumstances). *See In re Marriage of Vrban*, 293 N.W.2d 198 (Iowa 1980) (court is to consider factors listed in *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968) less the fault standard). *See In re Marriage of Beeh*, 214 N.W.2d 170 (Iowa 1974) (the court has granted one spouse an interest in property inherited by the other in a number of cases).

█ Real property that has been in the family of one of the parties prior to their marriage ought, as far as possible, to be permitted to remain in the possession of that party. If the marriage has lasted a very long time and such real property is the principal asset of the couple and if maintenance of the family and an accustomed standard of living requires that the property or a portion thereof be placed in the possession and control of the other party for a period of time, then the court may order that that be done. Or if, in order to provide a reasonable division of the couple's property and to provide for the proper maintenance of the other party it is necessary to divide or sell such property, then that too may be done—but only as a last resort, the court's duty being to balance the claim of the one party to that property on the ground of family history and continuity against that of the other for the continuation of an accustomed style of life, particularly during the minority of any children of the marriage. *See In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1979) (court considered style of living to which wife had become accustomed as a consequence of husband's affluence in making a lump sum award in lieu of alimony). On the other hand, where, as here, there are several parcels of real property, each of them acquired during the marriage of the parties, or very close thereto, then the court may divide those parcels to suit the needs and desires of the parties, taking into account their

monetary value, sentimental attachments that have grown up around them, the effort that each of the parties has put into acquiring and improving them, and such other considerations as the court may deem appropriate.

█ As to tangible personal property, the number of variables is very great, but some general guidelines may be applied. In general, gifts and inheritances should be permitted to remain with the intended recipient. Such intimate personal items as jewelry, clothing, and the like should also be permitted, as far as is reasonably possible, to remain with the person whose possessions they were during the marriage. Any item that is reasonably likely to possess far greater sentimental value to one party than to the other, such as jewelry, heirlooms, the fruits of hobbies (such as stamp or coin collections), and the products of artistic efforts by one of the parties (such as paintings, sculptures, ceramic work, weaving, and the like) should remain, as far as is reasonably possible, in the possession of the party to whom the sentimental value is the greatest. However, jewelry, collections, works of art, and other items purchased primarily as investments should be divided equally between the parties, such division being based as far as possible on current market value.

█ Applying these considerations to the present case, we find that the relationship between Henry B. Wallace and Betty J. Wallace lasted for close to two decades, that they lived together for some seventeen years, about fifteen of them as husband and wife. There was a vast difference in their social and financial backgrounds, the husband having come from a prominent, wealthy family and the wife—at the time of their meeting, at any rate—on the edge of poverty.

Virtually all of the parties' net worth of approximately $15,000,000 is derived from stock given by or inherited from the husband's parents. The parties concede that no significant portion of this wealth is attributable to the efforts of either of them.

During the course of their marriage, the wife made great efforts to fit into the social milieu of the husband and his family, these efforts being eminently successful by any objective measure. She gave up her previous employment, educated herself in the social graces, versed herself on foreign customs, entertained his business associates and their wives, and became active in women's organizations and patriotic groups, eventually becoming national president of the National Society of the Daughters of the Founders and Patriots of America and national vice president of the Daughters of the American Revolution.

From life in a humble dwelling with no indoor plumbing, Betty J. Wallace assumed a position in high society with virtually unlimited power to purchase whatever she pleased whenever she wished to do so. There appears to be general agreement that her every wish in this regard was granted.

Both Henry and Betty indulged their fancies in expensive hobbies, accumulating large collections of stamps, souvenir plates, and other artifacts.

From our reading of the pleadings, the transcript, and the trial court's findings, it is evident that the court divided the property of Betty J. and Henry B. Wallace in accordance with the principles set forth above. With respect to personal property, the court gave due consideration to the sentimental value and the personal investments of the parties in the various artifacts, as well as to the monetary value of those items, as it strove to effect an equitable division.

Much same may be said of the division of the real property. On the facts before us, it is impossible to say that the division ordered by the court below was erroneous. It appears to have been predicated upon the attachment of the parties to each of the properties, their respective contributions to those properties and their improvement, and the relative values of the properties.

As to the division of other assets, the court was quite explicit in explaining its rationale for distributing them, taking into account the length of the marriage, the radical changes effected in the wife's standard of living, the life-style to which she had become accustomed, the amount of income which would be necessary to support something approaching that life-style in the future, the assets available to the parties, and the sources of those assets, both those pertaining to each of the parties in his or her own right and those which the court characterized as mutual assets. In addition, the court took into consideration the fact that the dissolution wipes out the possibility that the wife would receive a third of the husband's personal estate, or close to $5,000,000, upon his death. The final award to the wife, based upon all of these facts, was predicated upon the assumption that she would be able to realize a tax-free income of $10,000 per month upon investment of the $1,000,000 in cash that the court ordered the husband to distribute to her, and that that income would be sufficient to enable her to live comfortably. Her total net worth at the time of the distribution would be $2,300,000, which the court considered to be fair and equitable and consistent with the record and the applicable law. We agree. Although the income which the court considered necessary to enable the wife to sustain the life-style to which she had become accustomed is very large by the standards of most persons, the life-style to which she had become accustomed was very different from that of most persons. Moreover, the award was not unreasonable in light of the assets available to the husband, did not diminish appreciably any opportunities for investment or spending that he might have wanted to pursue, and did not frustrate the intentions of those who originally gave or bequeathed those assets to him.

Since the court's distribution is fully in accord with the principles set forth in *Schantz* and discussed herein, *supra*, that distribution is affirmed.

█ On May 29, 1981, the petitioner filed an application requesting (1) reimbursement of $7380, plus interest, which he paid for the Victoria House Cooperative for operating expenses through December 31, 1980; (2) a determination that the respon-

dent should pay $2385.20 for additional assessments on Victoria House; and (3) a determination that the petitioner is entitled to the proceeds of a 1976 tax refund of $1158.12, received in September 1980. This court orders that the petitioner is entitled to reimbursement for one-half of the amount he paid, that he should pay one-half the additional assessment, and that he is entitled to one-half the proceeds of the 1976 income tax refund.

Respondent is awarded $20,000 attorney fees for the appeal. *In re Marriage of Winegard*, 278 N.W.2d 505 (Iowa 1970). Costs are taxed to petitioner.

AFFIRMED.

All judges concur except CARTER and DONIELSON, JJ., who dissent in part and concur in part.

CARTER, Judge (concurring in part and dissenting in part).

I do not concur in the formulation of a priori rules for property division as set forth in division V of the decision. However, I concur in the result except for the award of attorney fees on appeal.

In *Craft v. Craft*, 226 N.W.2d 6, 9 (Iowa 1975), where the wife was awarded property worth $204,000, a much smaller sum than that involved in the present case, the court stated with respect to appellate attorney fees:

> Petitioner has applied for attorney's fees in connection with this appeal. Notwithstanding our affirmance of the trial court we do not believe respondent should be required to contribute toward petitioner's attorney's fees in connection with this appeal. We agree with respondent the property division and alimony award equip petitioner to pay her attorney. The application for attorney's fees on appeal is denied.

I would reach a similar result in the present case.

DONIELSON, J., joins in this partial dissent.