In re the MARRIAGE OF Donna S. HANSEN and Gary R. Hansen.

Upon the Petition of Donna S. Hansen, Appellant,

And Concerning Gary R. Hansen, Appellee.

No. 89–1456.

Court of Appeals of Iowa.

Dec. 27, 1990.

Larry J. Cohrt of Swisher & Cohrt, Waterloo, for appellant.

Larry J. Anfinson of Randall, Anfinson & Luce, Waterloo, for appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

Donna S. Hansen appeals several aspects of the decree dissolving her marriage to Gary R. Hansen. We affirm, as modified.

The parties were married in 1968 and had two children, Graden (born 1973) and Gretchen (born 1975). Gretchen is profoundly deaf, hyperactive, and has a growth hormone deficiency.

Gary, who was forty-five at the time of trial, is a high school graduate. He is

employed as a process engineer for John Deere & Company, earning an annual salary over the past five years of $43,423 to $54,630.

Donna, who was forty-two at the time of trial, is a high school graduate. She was a full-time mother until 1987 when she began working part-time. Donna currently works part-time for the Area VII Education Agency, earning $4.47 per hour.

Prior to trial the parties entered into a written stipulation. At trial and now, Donna repudiates the stipulation. The district court entered a decree dissolving the parties' marriage and placing the children in joint legal custody with primary care of Gretchen with Donna and primary care of Graden with Gary, ordering Gary to pay Donna $465 per month as child support, and dividing the parties' property.

Donna contends the district court gave undue weight to the stipulation which she claims was obtained through duress and mental abuse. Donna challenges the economic provisions of the decree. She urges the court to require Gary to support Gretchen beyond the age of eighteen because of her handicap. Donna claims the property division was inequitable. She further requests alimony and attorney fees.

■ Review of dissolution proceedings is de novo. We give weight to the fact findings of the trial court, especially concerning the credibility of witnesses. Iowa R.App.P. 14(f)(7).

■ Among the many things the court must consider in determining the division of property *equitably* between the parties, section 598.21(1)(k) specifically directs that the court consider any written agreement made by the parties concerning property distribution. A settlement stipulation in a dissolution proceeding is a contract between the parties and becomes a final contract only when it is accepted and approved by the court. *In re Marriage of Lawson*, 409 N.W.2d 181 (Iowa 1987); *Prochelo v. Prochelo*, 346 N.W.2d 527, 529 (Iowa 1984). The general rule, as stated in 49 C.J.S. 311, is:

The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement received the sanction of the court or is rendered and promulgated as a judgment.

*Van Donselaar v. Van Donselaar*, 249 Iowa 504, 505–09, 87 N.W.2d 311, 313–14 (Iowa 1958). Quoting *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288, 291 (Tex.1951), the Iowa court went on:

It is not sufficient to support the judgment that party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court.

Donna rejected the stipulation of the parties at the time of trial. That she had rejected it and that respondent had fair notice of that rejection was apparent from the case proceeding to trial. See *Van Donselaar v. Van Donselaar*, 87 N.W.2d at 313. The court, therefore, had no authority to enter a consent decree based upon the stipulation. *Id.*

■ Under the record of this case, the court, while not directly entering a judgment on the stipulation, did so by indirection. At the conclusion of the evidence and the short statements of counsel, the court said:

Now, I don't think it can be argued in this case that either party did not have legal advice and protection at the time this was entered into.... As a result of negotiations, Exhibit C was entered into. The court thinks that they are bound by that as to all of the matter except with the possibility of child support....

The court is going to instruct counsel for the petitioner [sic] to draw a decree incorporating the terms of Exhibit C and Exhibit A, which should be enforced.... Well it's the opinion of the court that things are pretty well covered in Exhibit C, that stipulation, because they were both represented by competent counsel at that time. And that's the opinion of the court.

Respondent makes the argument that the stipulation, as indicated by the court, is

binding and that the court must enforce it as to the parties to the action. We disagree.

Although the court in *In re Marriage of Wallace*, 315 N.W.2d 827 (Iowa App.1981), dealt with the question of the effect of the amendment to Iowa Code Chapter 598 and the effect enactment of section 598.21 had upon inherited property, it said:

> [T]he crucial issue before us is whether the distribution of property in the particular circumstances of this case was equitable, this being the ultimate test both before and after amendment of § 598.21(2) by the 1980 legislature. *Schantz v. Schantz*, 163 N.W.2d 398 (Iowa 1968).

While it is proper and necessary for the court to consider any agreements made by the parties (perhaps limited to those which have not been rejected or repudiated before trial or during trial), the provision in section 598.21(1)(k) that the court consider any written agreement made by the parties concerning property distribution is only one of the considerations the court must address. Section 598.21 is substantially a "codification of principles established by prior case law." *In re Marriage of Hansmann*, 342 N.W.2d 495, 496 (Iowa 1984). In *Hansmann*, the court stated:

> The amendment merely fixes the starting point for the equitable determination. The ultimate test is the same as it was before. *Wallace*, 315 N.W.2d at 830.

It is apparent, therefore, the statute is not intended to require a stipulation or agreement of the parties as to the distribution of property is to be enforced as a binding agreement on such distribution. To the extent the court held the distribution contained in the agreement was binding upon Donna, and upon that ground, granted judgment, the court was in error. The court's duty, as is ours, is to make a just and equitable distribution of the assets of the parties upon dissolution of their marriage.

We do not believe the property distribution by the trial court was fair and equitable under the facts and circumstances of this case. Section 598.21(1) mandates division of property equitably between the parties, considering the length of the marriage; the property brought into the marriage by each party; the contribution of each party; the age and health of each party; the earning capacity of each party, the amount and duration of support payments; other economic circumstances and tax consequences. Gary's statement of affairs also took into consideration the tax ramifications of the liquidation of these assets, which is a fair consideration in property distribution matters. Iowa Code § 598.21(3)(g) (1989).

Considering the assets set off to Donna and those set off to Gary, it appears the decree resulted in a total of roughly $18,000 being set off to Donna and a net of approximately $63,165 to Gary. This was after setting off Gary's inheritance of approximately $12,000. The result of this distribution gives Gary approximately a $48,000 larger share than that awarded to Donna.

Gary has received his Individual Retirement Account (IRA) of the value of $5,600 at the time of trial. He was awarded a 401(k) deferred tax savings plan with his employer, with a value of $22,050. He has a vested pension plan with his employer, which, at its present value of $10,645, would pay a pension at age sixty-five of $635.30. Although these accounts cannot be withdrawn at the present time without substantial penalty and must await Gary's age sixty or thereabout, they are assets of the marriage and are proper subjects for distribution at the time of dissolution. The trial court made no division of any of these assets.

In order to more nearly equalize the division of assets, we award to Donna, in addition to that provided by the decree, the 300 shares of stock of Kansas City Power & Light, shown on Gary's "Statement of Affairs" as item 10, with a value of $9,600; and 100 shares of stock of Empire District, shown on Gary's "Statement of Affairs" as item 11, with a value of $2,600. In addition, we order that Gary shall pay to Donna the sum of $8,000, plus interest at the legal rate, over a period of twenty-four months

as an additional property distribution. In the event the stocks awarded to Donna shall have been redeemed or disposed of, Gary shall pay over to Donna the value of such stocks at the time of redemption or shall transfer to her stocks of equal value.

■ The inheritance received by one party during a marriage should not be considered by the court in a property division at the time of a dissolution of marriage unless the failure to divide the inherited property is inequitable to the other party. Iowa Code § 598.21(2) (1989). As indicated above, we have set off the inheritance from Gary's mother to him prior to our adjustment of the division of property.

■ Alimony is never an absolute right in a dissolution of marriage proceeding. *In re Marriage of Dahl,* 418 N.W.2d 358 (Iowa App.1987). In view of the distribution of assets made by this opinion, an award of alimony is not warranted. With her earnings, together with the child support she will receive, as well as the income that she can receive from the investments or cash that she receives, Donna should have sufficient resources to support herself and Gretchen in a reasonable style.

■ Donna has requested that child support continue for Gretchen in the amount of $465 per month for Gretchen's life, until she dies, marries, or is otherwise found to be capable of supporting herself, or until Gary's death. There are two problems associated with the child support ordered in this case.

The parties to this action have established custodial accounts for both of their children, which are payable, it appears, when each child reaches eighteen years of age. Considering the amount of the account set aside for Gretchen, and considering the fact that it should grow in value during the years until her eighteenth birthday, there should be no need to provide additional support at this time for the period after Gretchen reaches the age of eighteen. If she remains a child (adult) in need of support, after eighteen, such an issue may form the basis for modification of the decree in this matter. *See* Iowa Code

§ 598.1(2) (1989). The custodial account held for Gretchen shall continue to be held for her benefit until her eighteenth birthday and then shall become her own property. Gary shall make all necessary arrangements for this to be accomplished. Gary shall include Gretchen as a beneficiary of his life insurance policies which are now in existence and shall continue her as such beneficiary until she reaches age eighteen.

On October 16, 1990, the Iowa Supreme Court adopted permanent child support guidelines, effective December 31, 1990. The supreme court's order specifies that "[t]he court shall not vary from the amount of child support which would result from application of the guidelines without a written finding that the guidelines would be unjust or inappropriate...." We remand this matter to the trial court for a determination of the applicable amounts of child support under the guidelines, unless the court makes a written finding that the guidelines would be unjust or inappropriate. Applying the guidelines in this case poses some practical difficulties, not readily solved from the face of the guidelines, due to the unique custodial arrangement in this case.

■ The supreme court's order states: "The purpose of the guidelines is to provide for the best interest of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." The supreme court intended that noncustodial parents share the burden of child care costs. We believe the principle holds true even when each parent has custody of a child or children. It hardly would be fair, for instance, for a parent who retains physical custody of one child to escape responsibility for supporting several children who are in the physical custody of the other parent.

It is also clear that the supreme court intended to tie the divorcing parents' obligations to an ability to pay. Thus, it is clear that even when the parents each retain physical custody of the same number of children, it is necessary to engage in the analysis set out by the supreme court in

the guidelines. Again, it would be unfair for a parent who has a large income to escape responsibility for support to the parent with a paltry income.

We conclude that, when a split custody arrangement is entered into, the trial court must calculate the amount of child support from each parent. In so doing, the trial court must make that determination for each parent while assuming the other parent is the non-custodial parent.

For example, assume the father has custody of two children and the mother has custody of one child. The trial court must determine the father's obligation by looking at the "one child" table in the guidelines and assuming that the father is non-custodial. Likewise, to determine the mother's obligation, the court must look at the "two children" table and assume that the mother is non-custodial. If we further assume that the mother has net earnings of $2,000 per month and the father has net earnings of $550 per month, the father will be liable for 15.3% of his income ($84.15) and the mother will be liable for 34.3% of her income ($686). The parties may, of course, exchange checks or agree on a more sensible arrangement, such as having the mother pay $601.85.

 The child support payments must continue in this manner until a child becomes emancipated or otherwise ineligible. Thus, in the example, if the mother has custody of the eldest child, the father's payments will cease when that child is emancipated or otherwise ineligible, but under our assumptions, the mother will continue to make monthly payments of $686. When the second eldest child becomes emancipated, the mother's obligation must be recalculated based upon the "one child" table. In the example, therefore, if all things remain equal, the mother's obligation would decrease to 24.5% of her income ($490).

In the present case, each parent has custody of one child. The father's income is substantially higher than the mother's. The child support payable by each parent will be determined by reference to the table applicable to one child. Based upon the record, and assuming net monthly income under the guidelines, by the father of $2,700 per month and net monthly income under the guidelines by the mother of $700, the father would be obligated to pay 23.8% of his net monthly income to the mother as child support. Under the same assumptions, the mother would be obligated to pay 14.2% of her net monthly income to the father as child support. Reducing these percentages to amounts would cause the father to be obligated to make payments of child support to the mother in the amount of $642.60 and payments by the mother to the father of $99.40. The court should make the determination from the actual evidence showing the net monthly income of each party utilizing the requirements of the guidelines for such determination.

Donna is awarded $750 to be applied to her appellate attorney's fees. The denial of trial attorney's fees is affirmed.

AFFIRMED AS MODIFIED AND REMANDED.

HAYDEN, J., concurs.

HABHAB, J., specially concurs.

HABHAB, Judge (specially concurring).

I concur with the majority in all respects except that part that remands this cause with directions to the trial court to compute child support in accordance with the child support guidelines adopted October 16, 1990. If those guidelines were in effect at the time of trial, I would have no problem with this part of the majority opinion. However, since they were not, I see no justification in directing the trial court to perform a task in accordance with rules adopted after a trial on the merits.