MARCIA WUBBENA STAFFORD, )
                        )
        Plaintiff/Appellee,   )       Appeal No.**FILED**
                        )       01-A-01-9804-CV-00174
v.                      )       **February 19, 1999**
                        )       Warren Circuit
JAMES ARTHUR STAFFORD,  )       No. 9108 **Cecil Crowson, Jr.**
                        )       **Appellate Court Clerk**
        Defendant/Appellant.  )
                        )


COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR WARREN COUNTY

AT McMINNVILLE, TENNESSEE


THE HONORABLE CHARLES D. HASTON, JUDGE


BERNARD K. SMITH
P. O. Box 490
McMinnville, Tennessee  37111
        ATTORNEY FOR PLAINTIFF/APPELLEE


J. HILTON CONGER
200 South Third Street
Smithville, Tennessee  37166
        ATTORNEY FOR DEFENDANT/APPELLANT


AFFIRMED AND REMANDED


                                WILLIAM B. CAIN, JUDGE

# OPINION

The only issue presented for appellate review in this divorce action is whether or not the marital property was equitably divided.

Marsha Wubbena Stafford and James Arthur Stafford were married on June 23, 1990 and separated in Warren County, Tennessee on April 9, 1997. There were no children born of the marriage. On April 17, 1997, wife sued for divorce on grounds of inappropriate marital conduct and husband, on August 4, 1997, answered and counter-complained for divorce on inappropriate marital conduct grounds.

At a hearing on October 14, 1997, the trial judge sustained the complaint of the wife and granted her a divorce on grounds of inappropriate marital conduct. The court referred to the Special Master the question of marital property and its disposition. This hearing before the Special Master was also held on October 14, 1997 with pertinent findings as follows:

> At the conclusion of the proof, the Special master finds that plaintiff brought into the marriage the sum of approximately $200,000.00 (two-hundred thousand dollars), the defendant less than $20,000.00 (twenty-thousand dollars). The parties converted the individual property into marital property by purchasing a house and real estate. The parties' residence burned and the contents of the home were replaced with insurance proceeds. While plaintiff was away on a trip, defendant withdrew $84,000.00 (eighty-four thousand dollars) cash, moved everything that was moveable, and gave a "fake" bill of sale for the farm equipment to a neighbor in an attempt to conceal these asset [sic] which could not be moved. Defendant will admit filing no income tax returns for the time of the marriage but claims income between $1.00 (one dollar) and $1,000,000.00 (one-million dollars) but took the 5th as to the exact amount. Defendant indicates that he has spent the $84,000.00 (eighty-four thousand dollars) gambling and on bad business deals. Defendant indicates that he has none of the funds left.
>     Plaintiff is left with a partially completed house, no insurance proceeds and a substantial mortgage. It is the finding of the Special Master that an equitable division of the parties' assett [sic] would be to give the plaintiff the house, real estate, personal property, automobiles, farm equipment and cabinet equipment that defendant removed to

Mississippi, she would be responsible for the mortgage. In addition a judgment in the amount of $42,000.00 (forty-two thousand dollars) should be rendered against defendant.

While a judgment may be dischargeable in bankruptcy, the U. S. Attorney may be interested in defendant's tax status.

The trial judge concurred in the findings of the Special Master and husband appealed.

The proof in the case amply supports the actions of the Special Master and the trial judge as to the disposition of property. At the time of the marriage, wife owned various assets with an aggregate value of $202,743.16. Husband had assets at the time of the marriage valued at $18,367.00. During the marriage wife used her separate property for the benefit of both parties, providing the down payment for an unimproved farm and providing the money for building their home. This home burned on or about January 1, 1997 with insurance paying approximately $95,000.00 for the home and later $67,749.53 for contents. Both parties agree that the separate pre-marital property has been transmuted, and that all resulting property is marital. See *e.g. **Batson v. Batson***, 769 S.W.2d 849, 585 (Tenn.App.1988).

With the reconstruction of the marital home unfinished, husband in March of 1997 disappeared after withdrawing $84,000.00 from the savings of the parties, taking all three of the parties' vehicles together with his cabinet making tools and effecting a fraudulent transfer of farm equipment to a neighbor, James Owens. He lost most of the money in gambling transactions at casinos in Tunica, Mississippi. Husband's testimony is revealing.

> Q. And where is the farm equipment?
> A. It's at Jim Owens' house.
> Q. And we've -- we had a bill of sale around here that we could introduce, but that was not a true bill of sale; is that correct?
> A. No, sir, Jim told me he needed something to get her off his back because she was calling and aggravating him and his wife to death. And I made the bill of sale out and took it to him. I told him if it come to court, tell the truth.
> Q. Okay. And that's what you're here to do, too?
> A. Yes, sir.

Q.    When was the last time you filed an income tax return?

A.    Due to the grounds of my counsel's advice, I refuse to answer that question.  It may incriminate me.

Q.    Did you file an income tax return during the course of this marriage?

A.    Due to my counsel's advi[s]e, I refuse to answer that question on the grounds it may incriminate me.

Q.    Did you earn any funds during the course of this marriage?

A.    Yes, sir, but I have no idea how much.

Q.    You have no idea how much?

A.    No, sir.

Q.    It could be as little as a dollar.

A.    Correct.

Q.    Or as much as a million?

A.    Correct.

Q.    When you left here, you took everything with you, all of your tools?

A.    Yes, sir.

This court has held:

[13]    A trial court's division of marital property is to be guided by the factors contained in Tenn.Code Ann. § 36-4-121(c).  However, an equitable property division is not necessarily an equal one.  It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

[14]    Tenn.Code Ann. § 36-4-121(c)(1) permits trial courts to consider the duration of the marriage.  In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place.  *In re Marriage of McInnis*, 62 Or.App. 524, 661 P.2d 942, 943 (1983).

[15]    When relatively short marriages are involved, each spouse's contributions to the accumulation of assets during the marriage is an important factor.  *In re Marriage of Peru*, 56 Or.App. 300, 641 P.2d 646, 647 (1982).  When a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished, and claims by one spouse to another spouse's separate property are minimal at best.  *In re Marriage of Wallace,* 315 N.W.2d 827, 830-31 (Iowa Ct.App.1981).

*Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn.App.1988).

-4-

The marriage at bar, one of only seven years duration, falls in the same category as does the marriage in **Batson**.  The husband brought a comparative pittance to the marital estate.  Under the decree of the trial court he received, in property division, $42,000.00 of the money from marital assets that he had squandered at the gambling tables; which is more than twice his marital contribution.  Wife received everything else.  This division " . . . as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place."  **Batson v. Batson**, 769 S.W.2d 849, 859 (Tenn.App.1988).

The evidence certainly does not preponderate against the marital property disposition made by the trial court and the judgment will therefore be affirmed.

Such being the only issue raised on appeal it remains but to tax the costs against the husband, James Arthur Stafford.

The judgment of the trial court is affirmed and the case is remanded for collection of costs.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, PRES. JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE