# IN THE COURT OF APPEALS OF IOWA

No. 19-1889
Filed November 30, 2020

IN RE THE MARRIAGE OF MARJORIE ANN BOJANSKI
AND JAMES JOSEPH BOJANSKI

Upon the Petition of
MARJORIE ANN BOJANSKI,
     Petitioner-Appellee,

And Concerning
JAMES JOSEPH BOJANSKI,
     Respondent-Appellant.

_____

     Appeal from the Iowa District Court for Pottawattamie County, Richard H. Davidson, Judge.

     The respondent appeals from the district court's dissolution decree.

**AFFIRMED AS MODIFIED.**

     David A. Poore, Council Bluffs, for appellant.

     Amanda J. Heims, Council Bluffs, and Michael J. Murphy, Council Bluffs, for appellee.

     Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

James Bojanski appeals from a dissolution decree dissolving his marriage to Marjorie Bojanski and distributing the parties' marital property. We affirm the district court's denial of James's request for alimony. We modify the court's calculation of the cash property settlement by eliminating a credit for premarital property and by determining a credit for gifted monies.

**A.    Background Facts and Proceedings**

Marjorie and James Bojanski married in 1995. At the time of trial, the parties had been married for over twenty-three years. It was the second marriage for both parties. Marjorie built a home with her first husband in 1986 with a $78,000 loan and brought that home into her marriage with James, subject to the mortgage. The parties did not enter into an antenuptial agreement; however, their financial recordkeeping was influenced by their prior marriages. The parties kept monthly records of expenses incurred by each and would regularly reimburse the other for any difference.

In 1997, the parties refinanced Marjorie's home in both their names for $68,928, and James was added to the deed, resulting in the home being held in joint tenancy. The assessed value of the home in 1995, the year of the marriage, was $102,430. Marjorie testified that at the time of her marriage to James she had $9000–$10,000 of equity in the residence; Jim testified there was approximately $6600 paid down on the original mortgage, with the "majority" of the mortgage remaining.

In the early years of the marriage, the parties worked together at Conagra Foods, where they met. James subsequently worked as a courthouse security

guard for the Sheriff's Department in Douglas County, Nebraska. He retired from this position in 2015. Marjorie obtained her bachelor's degree in management during the marriage. When she was not able to secure a management position with Conagra, she started her own business, Country Fresh Cleaning, at the beginning of 2005. At the time of trial, Marjorie was still operating this cleaning business. During the marriage, beginning in 2010, Marjorie received a number of monetary gifts from her parents, totaling just over $109,000. Marjorie testified a portion of these gifts enabled the parties to make improvements to the home, including a 2014 kitchen remodel.

Marjorie filed a petition for dissolution of marriage on January 19, 2018. Trial was held on April 24, 2019, at which time Marjorie was sixty-two years old and James was sixty-seven years old. The home was not subject to any encumbrance at the time of trial. The parties stipulated to use the home's current assessed value of $263,000 to calculate the equity for purposes of distributing marital property. James asked for "fifty percent of the equity" in the home.

The district court entered a decree of dissolution on August 26, 2019. The court determined the home was valued at $263,000 and credited Marjorie $102,430, the assessed value of the home in 1995. The district court determined there was $160,570 of equity in the home to be distributed as marital property. The court ordered an equalization payment to James of $97,741.50, taking into account vehicle values and bank accounts distributable as marital property. In calculating the value of the home for equitable distribution, the court said it excluded "gifts and inherited monies." The decree also restored Marjorie to her maiden name.

On September 3, 2019, James filed a motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). James took issue with the court's adoption of the marital home's 1995 assessed value as the proper premarital valuation, arguing the court should have incorporated evidence that the home was encumbered by a mortgage in 1995. James further asked for attorney fees and argued the court should not have denied his request for alimony.

In Marjorie's response to the rule 1.904(2) motion, she argued the district court's valuation of the home was proper, arguing:

> Marjorie had $9,702.00 in equity at the time of the refinancing, her parents then saved them in excess of $14,000.00 in interest payments, [and] any major improvements in the home coincided with monetary gifts from Marjorie['s] parents. At no time did James have the savings or the ability to pay for any of the major improvements made to the home.

The court issued a ruling on the rule 1.904(2) motion on October 14, 2019. The court acknowledged the finding that the home's premarital value was equivalent to the assessed value of $102,430 meant ignoring the encumbrance for purposes of the calculation, but the court rejected James's request to take a different approach. The court noted it acted similarly with respect to the gifted funds Marjorie invested in the home and the interest savings that resulted from a no-interest loan the parties entered into with Marjorie's parents. The court explained that Marjorie's investments in the home with gifted monies and the interest savings together counterbalanced the effect of declining to factor the 1995 encumbrance into its calculations. The court did not alter its valuation of the home or modify the equalization payment owed to James.

The court affirmed its denial of James's request for alimony, noting that James was debt-free and entitled to an equalization payment of $97,741.50 under the original decree. The court, however, sustained a portion of the rule 1.904(2) motion and awarded James $5000 of attorney fees. James appeals.

**B.    Standard of Review**

"An appeal regarding the dissolution of marriage is an equitable proceeding. Our review is therefore de novo. We give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (citations omitted). "In reviewing questions related to spousal support, while our review is de novo, we have emphasized that we accord the trial court considerable latitude. We will disturb the trial court's order only when there has been a failure to do equity." *Id.* (citations and internal quotation marks omitted).

**C.    Discussion**

On appeal, James argues the district court's valuation of the home was inequitable because the district court provided Marjorie a premarital credit.[1] Alternatively, James argues the district court should have taken into account the encumbrance on the home at the time of marriage in determining any premarital credit. James further disagrees with the court's reasoning that gifted money from Marjorie's parents and interest savings from a favorable loan from Marjorie's

---

[1] We note at trial through testimony and his proposed distribution exhibit, James requested he receive an amount equal to fifty percent of the home equity value; however, in his rule 1.904 motion he argued for receiving a percentage of home value less a premarital credit. We find the record sufficiently preserves the arguments James puts forth on appeal.

parents be credited dollar for dollar against the portion of the home classifiable as marital property. Lastly, James asks that we reverse the district court's decision denying him alimony.

1.      Valuation of Marital Home

James argues Marjorie is not entitled to a credit for premarital property. Alternatively, he argues the premarital value of the home should be determined with reference to the encumbrance on the home at the time of the marriage. He seeks an increase in the equalization payment.

Iowa Code section 598.21 (2018) governs the disposition of property in a dissolution action. Section 598.21(5) requires that the court "divide all property, except inherited property or gifts received or expected by one party, equitably between the parties after considering" thirteen enumerated factors. *See* Iowa Code § 598.21(5)(a)–(m).

Iowa Code section 598.21(6) provides:

> Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

We consider the following factors when deciding whether it would be inequitable to exempt a spouse's gift or inheritance from division:

> (1) contributions of the parties toward the property, its care, preservation or improvement[ ];
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;

> (5) any other matter[,] which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013) (alterations in original) (quoting *In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000)).

For purposes of premarital property, "Unless the marriage is short in duration, our law does not credit a party for the value of property owned prior to the marriage." *In re Marriage of Hingtgen*, No. 00-1103, 2001 WL 912683, at *2 (Iowa Ct. App. Aug. 15, 2001) (citing *In re Marriage of Hass*, 538 N.W.2d 889, 892–93 (Iowa Ct. App. 1995); *In re Marriage of Brainard*, 523 N.W.2d 611, 616 (Iowa Ct. App. 1994)). "To the contrary, the property brought to the marriage by each party is only a factor to consider together with the other relevant factors in determining an equitable property division." *Brainard*, 523 N.W.2d at 616 (citing what is now Iowa Code section 598.21(5)(b)). "If there were wide disparities between the assets of the parties at the time of the marriage . . . the length of the marriage is a major factor in determining what the respective rights of the parties with respect to such property are at the time of its dissolution." *In re Marriage of Wallace*, 315 N.W.2d 827, 831 (Iowa Ct. App. 1981); *see also McDermott*, 827 N.W.2d at 679 (quoting *Goodwin*, 606 N.W.2d at 319).

Our laws take a different approach with respect to inherited or gifted property. Ordinarily, all property, even property brought into the marriage, is subject to division. *See McDermott*, 827 N.W.2d at 679. The exception is property that is gifted to or inherited by one party; that property is divisible only if the court finds failing to do so would be inequitable to the other party. *See id.* at 678 (citing Iowa Code § 598.21(6)). The court "should not automatically award [premarital

property] to the spouse who owned the property prior to the marriage." *Id.* Premarital property "is merely a factor to consider by the court, together with all other factors, in exercising its role as an architect of an equitable distribution of property at the end of the marriage." *Id.* (citation omitted).

"We also consider the length of the marriage, the amount of time the property was held after it was devised, and whether the parties enjoyed a substantial rise in their standard of living as the result of the inheritance." *In re Marriage of Ritchie*, No. 11-2029, 2012 WL 3854662, at *4 (Iowa Ct. App. Sept. 6, 2012) (citing *Goodwin*, 606 N.W.2d at 320). "Because precedent is of little value when framing a distribution, our decision must ultimately depend on the particular facts relevant to each case." *McDermott*, 827 N.W.2d at 682. Further, "it is important to note the act of placing gifts or inheritances received by one spouse into joint ownership and/or commingling the same with other marital assets is not controlling in deciding whether the property should be divided as a martial asset." *In re Marriage of Boland-Chambers*, No. 14-0920, 2015 WL 1849501, at *5 (Iowa Ct. App. Apr. 22, 2015) (quoting *In re Marriage of Liebich,* 547 N.W.2d 844, 851 (Iowa Ct. App. 1996)).

In the dissolution decree, the district court calculated the value of the marital home by subtracting the assessed value in the year of marriage from the assessed value at the time of trial. Following James's rule 1.904(2) motion contesting this method, the district court acknowledged its calculation did not include the encumbrance on the property in 1995 but stated that Marjorie's contributions made from gifted monies had not been included either, noting that these amounts approximately offset each other. The district court found Marjorie made

approximately $52,000 in claimed contributions from gifted monies to the home's improvement. The court further determined the parties saved approximately $17,000 in interest due to help from Marjorie's parents with the mortgage.

In ruling on James's rule 1.904 motion, the court determined the total of these sums, approximately $69,000 (gifted money and the interest-free loan), was roughly equal to the amount of debt the parties refinanced, $68,928. Because the $52,000 in claimed contributions from gifted monies and $17,000 in saved interest roughly equaled the amount of the encumbrance on the property at the time of marriage, the district court found it fair and equitable to calculate the home's marital value without reference to gifted contributions, interest, or the encumbrance.

We depart from this calculation. First, we disagree that the $17,000 in interest savings can properly be deemed non-marital property, as the record contradicts the district court's finding that the parties saved $17,000 in interest because Marjorie's parents "paid off the mortgage." James testified at trial that the parties were able to pay off the remaining balance on the mortgage because he and Marjorie received a no-interest loan from Marjorie's parents, which they paid back. Marjorie's parents did not make direct payments on the mortgage. Any interest saved because Marjorie's parents offered the parties a no-interest loan is not properly classified as a "gift or inheritance" pursuant to section 598.21(6). James assumed the mortgage obligation when the parties refinanced the existing encumbrance on the home. Any saved interest, even if achieved with the help of a no-interest loan from Marjorie's parents, accrued directly to the parties responsible under the mortgage, James and Marjorie. Accordingly, the interest savings is marital property.

The district court offset the mortgage by providing Marjorie credit for gifted money received from her parents she claimed were spent on home improvements. In its order on the rule 1.904(2) motion, the district court acknowledged Marjorie's claim that she received some $109,161.72 in gifted property and specifically spent $52,063.25 of the gifted funds on making improvements to the property.[2]

In support of her argument that improvements to the home were made with gifted monies, Marjorie submitted an exhibit showing over 150 credits and debits to her personal checking, business checking, and personal savings accounts. This exhibit is titled "Monies received from Parents from 2008 to present." It shows the date and transaction amount, the affected account, and a brief description of the transaction. The document shows a number of expenses associated with improvements to the home, including a "New water source heatpump" for $12,617.44 on January 18, 2011; $3440.05 for "Cement siding for house—$240 ins[urance] used" in February 2012; approximately $25,000 for a 2014 kitchen remodel; $460.01 for a clothes dryer in 2016; $4500 for new kitchen windows in winter 2017–18; $2601.65 for kitchen windows and blinds in 2018, and numerous payments for property taxes.

We find it inequitable to reduce the value of the home's marital property portion by $52,000 for gifted sums based on the evidence offered to support Marjorie's contention that $52,063.25 of gifted funds were expended for

---

[2] Marjorie's exhibit 11A, paragraph 4, lists property she claims was purchased or established with gifted funds. Marjorie testified all of the assets in paragraph 4 were acquired with the use of gifted money with the exception of the specified bank account. The assets obtained with gifted money total approximately $52,000. These assets are separate from the gifted funds claimed for home improvements.

improvements to the home. For this reason, we disagree with the district court's method of calculating the amount of marital property in the home. The record does not justify a reduction of the value of the home's marital property portion by the dollar-for-dollar contributions Marjorie alleges were made solely with gifted monies.

With respect to the district court's calculation concerning the gifted monies, we find that such a reduction fails to take into account the parties' salaries over the relevant period far exceeded the amount of gifted monies. While Marjorie received $109,000 between September 2010 and September 2018, the parties' salaries amounted to several times that amount over the same period.[3] The gifts received from Marjorie's parents were annual, beginning in 2010. Over time, the gifts allowed for improvements to the home, but the parties were working during that same period. This steady accumulation of gifted monies allowed both parties a gradual improvement in their standard of living, which militates against a finding that the gifted money spent on home improvements should be exempt from division pursuant to Iowa Code section 598.2(6).

Second, the record does not show that contributions to home improvement were solely Marjorie's domain. Marjorie conceded that she and James both contributed sweat equity to home improvements. She noted they "did things together," including repairing the roof. Though she said James "didn't contribute

---

[3] A precise calculation of the sum of the parties' salaries is not possible, as the record lacks comprehensive bank records for the period in question, and trial testimony suggested that Marjorie earned more than was represented by financial records by failing to report cash received by the cleaning business. Jim testified the unreported cash was approximately $190,000.

large amounts of money to the remodeling," representative examples of their monthly accounting showed that payments to retailers with a home-improvement focus, such as Home Depot, were included in the accounting. Furthermore, Marjorie acknowledged that she did not maintain separation of her earned funds from the gifted funds. When asked, "So when you said 'I put my gifted money in a separate account,' that doesn't really mean anything, does it, because all your money was always kept separate," she responded, "Correct."

Finally, by offsetting $52,000 of gifted funds, the decree went beyond Marjorie's testimony. She testified she only sought credit for half the amount of gifted monies she alleges was spent toward renovating the home:

Marjorie: I am only asking for part of it.
      Q. What part are you asking for? A. At least half of it.
      Q. How much? A. Half of the $52,000.
      Q. So you want credit for $26,000? A. Yes.
      Q. Plus an additional nine or ten of premarital equity? A. Correct.

In light of these foregoing considerations, we find the marital portion of the home to be $263,000, the parties' agreed-upon value. No encumbrance remained at the time of trial. We further find it is equitable to provide Marjorie a credit for the gifted proceeds she sought at trial of $26,000.

Even if we were to adopt an alternative approach in calculating credit for the premarital property, the mortgage would be required to be subtracted from the value of the home at the time of the marriage to determine the value of any premarital credit. The assessed value in 1995 was $102,430. Although no evidence was introduced showing the precise amount of encumbrance in 1995, James produced an exhibit demonstrating the amount may have been

approximately $71,716.57, according to an amortization calculator. This amount differs slightly from the amount listed on the loan application submitted as exhibit 20. Exhibit 20 shows the parties refinanced the amount of $68,928; however, the document is timestamped September 17, 1997, two years into the marriage.

James's demonstrative amortization calculation appears to be a better representation of the outstanding principal at the time of marriage. Subtracting this amount from the 1995 assessed value of $102,430, the amount of premarital equity in the home would be $30,713.43. The difference between this amount and the assessed value at trial, $263,000, leads to a finding that the home has a marital property value of $232,286.57. This number conflicts with both parties' trial testimony concerning the amount of equity, with Marjorie using a figure of $9000-$10,000 and James using a figure of $6800.

However, given the length of the marriage, we determine equity requires that any premarital credit be eliminated. The district court decreed that Marjorie pay James an equalization payment of $97,741.50. This amount was premised on the court's finding that the marital home represented $160,570 of marital property. Because the amount ordered by the district court inequitably gave Marjorie credit for premarital property, we find the equalization payment should be increased.

We also find Marjorie should be credited with her requested portion of the money gifted by her parents since 2010. At trial, Marjorie requested $26,000. We find Marjorie's proposal does equity between the parties. Thus, the equalization payment owed to James is $135,956.50.

|  | James | Marjorie |
|---|---|---|
| Marital Home |  | $263,000 |
| 1958 JD Tractor |  | $5400 |
| Proceeds from Jeep |  | $100 |
| Dodge Dakota | $5000 |  |
| Jeep Cherokee |  | $22,000 |
| Bank Accounts | $5600 |  |
| Bank Accounts |  | $14,013 |
| Business (Jeep Liberty) |  | $4000 |
|  |  |  |
| Total | $10,600 | $308,513 |
| Difference | $297,913 |  |
| Credit for Gifted Money |  | ($26,000) |
| Equalization Payment | $135,956.50 |  |

2.    Alimony

"A trial court has considerable latitude when making an award of spousal support," and this court should only disturb it "if it fails to do equity between the parties." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). "The payment of alimony is not an absolute right; rather, whether a court awards alimony depends on the particular circumstances of each case." *In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). "The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997). "We reject the argument in the belief that nothing in the statute prohibits a consideration of ownership of property acquired by gift or inheritance, along with the earning capacity or anything else which might relate to an ability to pay, in determining whether alimony should be allowed." *In re Marriage of Thomas*, 319 N.W.2d 209, 212 (Iowa 1982). We consider the following factors:

    a. The length of the marriage.
    b. The age and physical and emotional health of the parties.

   c. The distribution of property made pursuant to section 598.21.

   d. The educational level of each party at the time of marriage and at the time the action is commenced.

   e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

   f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

   g. The tax consequences to each party.

   h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

   i. The provisions of an antenuptial agreement.

   j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

The parties' marriage lasted over twenty-three years. Marjorie is slightly younger, with some health problems. Both of her parents are deceased, and while her father's estate was pending at the time of the dissolution trial, it is undisputed that Marjorie will receive an inheritance of some substance.[4] James is receiving an equalization payment pursuant to section 598.21. James's retirement accounts net him approximately $30,000 annually. While Marjorie's income is slightly higher, she too is nearing retirement age. The trial court found the parties lived modestly during their marriage. In light of these circumstances and taking into

---

[4] Marjorie's discovery responses value the inheritance of 160 acres of land at $742,000, while Jim places the value at $1,200,000. In addition to farm ground, she received certificates of deposit of over $186,608, life insurance of $33,319.23, and a share of a rental property. These figures are separate from the sums gifted during the lifetime of Marjorie's parents beginning in 2010. James makes no claim to the inherited property.

consideration the property settlement, we find James will be able to provide for his needs and enjoy a standard of living reasonably comparable to that enjoyed during the marriage without alimony. We affirm the district court's denial of James's request for alimony.

**D.      Conclusion**

In order to accomplish equity between the parties, we remove the premarital credit on the home and determine a credit concerning gifted sums for purposes of arriving at the divisible marital property. We, therefore, increase the equalization payment owed to James to $135,956.50. We affirm the court's denial of James's alimony request. Neither party requests an award of appellate attorney fees. Therefore, we do not address such issue. Costs of the appeal are assessed equally to James and Marjorie.

**AFFIRMED AS MODIFIED.**