In re MARRIAGE OF Richard Wilson LIEBICH and Carolyn Marie Liebich

Upon the Petition of Richard Wilson Liebich, Petitioner–Appellee/Cross–Appellant,

And Concerning Carolyn Marie Liebich, Respondent–Appellant/Cross–Appellee,

and

Sharon Landa, Intervenor–Appellee.

No. 95–0587.

Court of Appeals of Iowa.

Feb. 28, 1996.

James R. Bowers and Stephanie Brick Drey of Brick, Gentry, Bowers, Swartz, Stoltze & Levis, P.C., Des Moines, for appellant.

Lad Grove, Ames, for petitioner-appellee.

Donald G. Juhl, Nevada, for intervenor-appellee.

Heard by HAYDEN, P.J., and HABHAB and HUITINK, JJ.

PER CURIAM.

Richard (Rick) and Carolyn Liebich were married on October 10, 1987. At the time of their marriage, Carolyn had one child, Arthur, who was born on December 26, 1983. Rick adopted Arthur. On May 23, 1988, Rick and Carolyn had a son, Richard.

Carolyn's mother, Sharon Landa, was appointed guardian of Arthur in December 1990 with the consent of Rick and Carolyn. The guardianship was prompted by the parents' desire to remove Arthur from the Ames school setting. Arthur displayed behavioral problems when he began attending pre-school. In fact, several schools asked Arthur to leave. Eventually, they asked Sharon to take Arthur into her home so he could attend the school district in which she lived, and, as stated above, Sharon became Arthur's guardian.

In 1987 Rick inherited a house and about $818,000 after his mother died. Rick also received a substantial amount of personalty including antiques and jewelry. Rick's inheritance was placed in trust with the First National Bank of Ames serving as manager of the liquid assets. Neither Rick nor Carolyn worked outside the home. In early 1988 $227,000 worth of securities were liquidated to purchase a new house on Oakland Street in Ames. In June 1990 First National's trust officer wrote to Rick and expressed his concern about the rapid depletion of the trust assets. During the previous year $40,000 in principal had been withdrawn in addition to $23,000 in interest which had been generated by the assets. Rick thereafter supplemented his inheritance income by securing several janitorial positions. In March 1992 the Liebich Family Revocable Trust was created. The remaining assets of Rick's inheritance, then valued at about $400,000, funded the trust. Carolyn was to be the initial trustee. She set up an administrative checking account. Rick never gained signatory authority over this account.

In 1993 Rick and Carolyn separated. Rick filed a petition for dissolution of marriage and shortly thereafter attempted to terminate the trust or revoke Carolyn's status as trustee. In his third amendment to his dissolution petition, Rick sought custody of Richard. Sharon intervened seeking custody of Arthur. Carolyn filed a petition to terminate the guardianship.

The parties obtained three custody evaluations. In 1993 the court appointed Carroll Roland to evaluate the three adults seeking custody. Roland also evaluated William Milliken, with whom Carolyn was then living, and Mary Fry, with whom Rick was then living. Roland recommended Arthur stay in Sharon's custody and Richard be placed in Rick and Carolyn's joint custody, with primary physical care being awarded to Carolyn. Roland noted the recommendation about Richard's custody was not made without reservation. She found Carolyn to be questionably reliable as an informant, and she questioned Rick's genuineness in seeking custody of Richard. In mid–1994 Ronald Hilliard performed a custody evaluation for Richard's custody only. Hilliard noted Carolyn's tendency to distort information and her high level of dependence in relationships with men. Hilliard noted Rick's paranoid tendencies and lack of parenting experience. Hilliard found Richard had a positive relationship with both parents and was somewhat ambivalent about his relationship with Arthur. Hilliard recommended Richard be placed in the parties' joint legal custody with primary physical care remaining with Carolyn. Thereafter, Craig Rypma performed a custody evaluation. He recommended both Arthur and Richard be placed in Carolyn's primary care with liberal visitation awarded to Rick.

At trial the court considered the dissolution petition, Carolyn's petition to terminate the guardianship, and Rick's application to revoke the family trust. The court concluded Sharon had overcome the parental preference and ordered the guardianship continued. Arthur was to remain in Sharon's sole legal custody and primary care. The court placed primary physical care of Richard with Rick and, because joint legal custody would not be workable, awarded sole legal custody to Rick as well. In placing custody with Rick, the court noted both Carolyn and Rick have significant limitations in their parenting abilities. The court stated it was forced to choose between "the lesser of two evils."

With respect to the property distribution, the court found Carolyn's actions in relation to Rick's inheritance were not a contribution to preserve or improve the assets, but "more likely a genuine breach of fiduciary duty." The court found no reason not to set off to Rick what remained of his inheritance, especially in light of the fact Rick was ordered to pay most of the parties' debt including Carolyn's attorney fees of more than $50,000 and his attorney fees of more than $67,000. Carolyn was awarded all her personal property in her possession, two vehicles, some jewelry Rick had gifted to her, and a block of stock valued at $24,134.

Carolyn appeals, and Rick cross-appeals.

## I. Custody.

█ Our review in this matter is de novo. Iowa R.App. P. 4. We give weight to the

fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App. P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner,* 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration"—the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa App. 1985).

There are three custody issues which must be addressed in this case: (1) whether sole physical custody of Richard was properly awarded to Rick; (2) whether sole legal custody of Richard was properly awarded to Rick; and, (3) whether the court properly continued Sharon's guardianship of Arthur.

*Sole Physical Custody of Richard:* As the district court noted, there is very little positive information about either parent available to the court. This was due primarily to both parties focusing on the deficiencies of the other rather than showing why he or she would be the better custodial parent. Nonetheless a decision must be reached concerning custody. After a full evaluation of the facts and circumstances in this case, we determine it is in Richard's best interest for sole physical custody to be awarded to Rick.

Richard is seven years old and has been under the primary physical care of Carolyn since the parties separated. Carolyn has a loving and close relationship with Richard. Nonetheless, we agree with the district court and find Rick would do a better job of raising Richard in the long range. Richard resorts to tantrums and displays of anger to get his way with Carolyn. As the district court noted, Carolyn concedes to this behavior without administering appropriate discipline. The district court found, and we agree, Carolyn's tendency to enter short-term relationships with men is damaging to Richard. Carolyn has a history of making false allegations of child abuse against Rick and a tendency to distort or exaggerate information and to lie. She has also exhibited an inability to support Richard's relationship with Rick. Rick, on the other hand, is much more capable and willing to support Carolyn's relationship with Richard. Rick participated in postseparation psychological counseling which the district court felt helped resolve to some degree the personality deficiencies he exhibited while married to Carolyn. Lastly, we agree with the trial court's assessment of Rick as having "some prospects of normalcy in store for his future life" while Carolyn will likely remain unstable.

In summary, we agree with the conclusions of the district court and affirm its decision to grant physical custody of Richard to Rick.

*Sole Legal Custody of Richard:* The factors to consider in determining whether joint or sole legal custody should be granted are: (1) whether each parent would be a suitable custodian for the child; (2) whether the psychological and emotional needs and development of the child will suffer due to a lack of active contact with and attention from both parents; (3) whether the parents can communicate with each other regarding the child's needs; (4) whether both parents have actively cared for the child before and since the separation; (5) whether each parent can support the other's relationship with the child; (6) whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity; (7) whether one or both parents agree or are opposed to joint custody; and, (8) the geo-

graphic proximity of the parents. Iowa Code § 598.41(3).

After careful examination of the above-listed factors, we agree with the district court's decision to grant sole legal custody to Rick. The district court found joint custody unworkable because the parents do not get along and are barely civil to one another. The parents are unable to communicate with one another and unwilling to support the other parent's relationship with the child. For instance, after the parties separated, Carolyn would not let Rick see Richard for six weeks. Additionally, Carolyn has made unfounded child abuse reports against Rick. As a result, Richard has begun making up false allegations of misconduct on the part of Rick because of the reaction it creates from Carolyn. We agree with the district court, such instances are of concern because (1) the incidents indicate Richard's growing tendency to adopt fiction instead of fact and (2) the incidents depict Carolyn's lack of support for Rick's relationship with Richard. The district court also noted, since the couple could not agree on medical care for Arthur, the same would probably hold true with respect to Richard. It is important to note, we do not believe Richard will suffer due to a lack of active contact with and attention from both parents. In fact, the district court was concerned Carolyn has a negative effect on Richard. We share this concern and believe Carolyn's behavior can only be emotionally damaging to Richard. We determine it is in Richard's best interest for sole legal custody to be granted to Rick.

■ *Guardianship of Arthur:* Although Rick concedes Arthur should remain in Sharon's custody, Carolyn still seeks custody of Arthur. We determine it is in Arthur's best interest to remain in Sharon's custody. Arthur is eleven years old and has resided with his grandmother, Sharon, for all but approximately three of those years. Sharon has been Arthur's primary caretaker and has provided a comfortable and stable home for him. Carolyn, on the other hand, has been unable to provide such a home.

When Arthur was in Carolyn's sole custody, he exhibited many behavior problems. He attended five different day care centers

and experienced difficulty in each. Although each center suggested Arthur be evaluated and tested for psychological and emotional problems, Carolyn and Rick refused because they did not want the child labeled as having behavior problems. Arthur did not succeed in public school kindergarten. Shortly after being enrolled on a conditional basis in a local parochial school in Ames, the school asked Arthur to withdraw. Finally, Carolyn and Rick asked Sharon and her husband Wilmer to have Arthur enrolled at a school district near Sharon's home. Sharon and Wilmer were appointed guardians and Arthur was enrolled in school. Arthur did much better in school while in Sharon's care. Although Arthur experienced some behavioral problems while in Sharon's custody, they were generally associated with problems concerning Carolyn. The trial court found, and we agree, Arthur's behavioral problems were the result of the uncertainty and unrest placed upon Arthur by Carolyn's insistence that he was going to be returned to her custody after the divorce was over. Dr. Roland believes Arthur's bad behavior after visits with his mother was the result of the destabilizing effect of her visits. He also believes Arthur was afraid he would have to leave his grandmother and live with Carolyn. Testing indicates Arthur prefers to stay with his grandmother and thrives in that environment.

For the above-stated reasons, we find it is in Arthur's best interest for custody to remain with Sharon. As such, Sharon's guardianship of Arthur must continue.

## II. Property.

■ The partners to a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa App.1991). Iowa courts do not require an equal division or percentage distribution. *Id.* The determining factor is what is fair and equitable in each circumstance. *Id.* We reject precise percentage divisions because "[t]he question is always what is an equitable and just award in a given set of circumstances." *In re Marriage of Cooper,* 225 N.W.2d 915, 919 (Iowa

1975). The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(1) (1991). *In re Marriage of Estlund*, 344 N.W.2d 276, 280 (Iowa App.1983).

The majority of the real and personal property possessed by Rick and Carolyn at the time of their separation was comprised of assets which Rick inherited or which the parties acquired through application of Rick's inherited funds. The district court awarded Rick all but $24,000 of the stock and investments held in trust which at the time were valued at $267,000. The court also awarded Rick the marital residence valued at $280,-000. On appeal, Carolyn claims the value of the property held jointly and in trust by the parties was $550,000 and her award of $24,-000 was inequitable. She further argues Rick intended to gift Carolyn a share of the trust assets.

First, we determine whether the inherited property is divisible as marital property. Iowa Code section 598.21(1) (1995) states, "the court shall divide all property, *except inherited property or gifts received by one party,* equitably between the parties...." (emphasis added). In determining whether inherited property is divisible as marital property, the controlling factors are the intent of the donor and the circumstances surrounding the inheritance or gift. *In re Wertz*, 492 N.W.2d 711, 714 (Iowa App.1992). Placing inherited property into joint ownership does not, in and of itself, destroy the separate character of the property. *In re Hoffman*, 493 N.W.2d 84, 89 (Iowa App. 1992). We agree with the district court's conclusion Rick was to be the sole recipient of this property. No evidence indicates Carolyn was intended by Rick's grandparents and mother to be a joint recipient with Rick.

Although we find Rick's inheritance is not marital property for purposes of division, it is important to note inherited property may be divided as marital property where nondivision would be unjust. *In re Van Brocklin*, 468 N.W.2d 40, 44 (Iowa App. 1991). Factors to consider in determining whether inherited property should be divided include: (1) contributions of the parties toward the property, its care, preservation, or improvement; (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised; (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them; (4) any special needs of either party; (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee. *In re Marriage of Thomas*, 319 N.W.2d 209, 211 (Iowa 1982). Iowa Code section 598.21(1) sets out other factors to consider in a property distribution.

As such, we next look toward the *Thomas* factors to determine whether nondivision of the inherited property would be unjust in this case. There is no evidence Richard's mother or grandparents, from whom the inheritance came, had an independent close relationship with Carolyn. Although Carolyn claims she preserved the assets by curtailing Rick's depletion of the assets, the district court concluded, "[r]ather than contributing to the preservation of the inherited property, Carolyn and Rick consumed the same without replenishment." The district court stated Carolyn's handling of the trust assets was "likely a genuine breach of fiduciary duty." Her duties consisted merely of writing checks for family bills. After the separation, she converted a substantial amount of the trust's income and assets for her own personal use, despite court orders to the contrary. We agree with the district court's conclusions and find Carolyn did not help preserve the inherited property. It is also important to note the marriage was of short duration, five years and four months. Ordinarily, if a marriage lasts a very short time, the claim of either party to the property inherited by the other during the brief duration of the marriage is minimal at best. *In re Steenhoek*, 305 N.W.2d 448, 454 (Iowa 1981).

Despite the above, the district court found it "somewhat unfair" to completely deny Carolyn any part of the inherited assets. The court acknowledged Carolyn shared in the

child rearing and domestic duties while the parties were married. Furthermore, since she was going to be a mother again, the court felt her income-earning capacity would again be inhibited for awhile. Consequently, the district court awarded a small amount of the inherited assets, $24,000, to Carolyn. The district court refrained from awarding a higher amount due to the large amount of expenses assessed to Rick in the form of the couple's debt and Carolyn's attorney fees. We find this division of Rick's inherited property fair and equitable under the circumstances of this case.

We also reject Carolyn's claim Rick intended to gift her a share of the trust assets. Carolyn claims joint tenancy ownership of the real estate and the transfer of the securities and debentures into the Liebich Family Revocable Trust constituted a gift entitling her to a share of those assets. To meet the requirements of a gift, a transfer must be accompanied by: (1) donative intent; (2) delivery; and (3) acceptance. *Gray v. Roth,* 438 N.W.2d 25, 29 (Iowa App.1989). The intent of the grantor is the controlling element. *Id.* As the district court noted, there is no clear intention on the part of Rick to pass right, title, and dominion of his inherited assets or any portion of them to Carolyn. The trust was made by Rick at the insistence of Carolyn and upon the advice of an attorney. In fact, Rick maintained the power to revoke the trust agreement. Furthermore, it is important to note the act of placing gifts or inheritances received by one spouse into joint ownership and/or commingling the same with other marital assets is not controlling in deciding whether the property should be divided as a martial asset. *In re Hoffman,* 493 N.W.2d at 89. We agree with the district court's conclusion Rick did not gift the trust assets to Carolyn.

In summary, after careful consideration, we determine the property division was fair and equitable under the circumstances of this case and, therefore, affirm the district court's distribution. We agree with the district court's conclusion the circumstances surrounding this inheritance and the intent of the donors indicate Rick was to be the sole recipient of the inherited property. Further-

more, after reviewing the factors set out in *Thomas,* we determine the district court's property division awarding only $24,000 of the trust assets to Carolyn was not unjust. This is particularly true given the district court's decision ordering Rick to pay the couple's debts and Carolyn's attorney fees. Lastly, we find Rick did not gift the trust property to Carolyn.

### III. Attorney Fees and Costs.

An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). The district court ordered Rick to pay Carolyn's trial attorney fees of more than $50,000. Rick did not appeal this decision and the decision, therefore, must stand. Carolyn now requests Rick pay an additional $30,000 for her appellate attorney fees. We are also disturbed by Carolyn's attorney charging exorbitant amounts, $30,000, for the appeal alone and $50,000 for the trial. Richard has already been ordered to pay $50,000 in attorney fees for Carolyn, and should not be required to pay any more. We order each party to pay his or her own attorney fees on appeal. Costs of this appeal are taxed three-fourths to Carolyn and one-fourth to Richard.

**AFFIRMED.**