# IN THE COURT OF APPEALS OF IOWA

No. 13-1419
Filed August 27, 2014

IN RE THE MARRIAGE OF BERNARD JOSEPH SINCLAIR JR.
AND MARGARETTE LYNN MORR,

Upon the Petition of
BERNARD JOSEPH SINCLAIR JR.,
        Petitioner-Appellant,

And Concerning
MARGARETTE LYNN MORR,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Lucas County, Terry R. Rickers,

Judge.


        An ex-husband appeals the economic provisions of a dissolution decree.

**AFFIRMED.**


        D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des

Moines, for appellant.

        William L. Shelton and R. William Peterson of Shelton Law Firm, Chariton,

for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Bernard Sinclair Jr. challenges the distribution of assets in the decree dissolving his marriage to Margarette Morr. Sinclair recognizes the marriage's brevity but argues the distribution of the couple's assets was inequitable because the district court failed to properly account for his financial contributions. Deferring to the district court's judgment of the credibility of the parties and considering the documentary evidence, or lack thereof, we conclude the district court's distribution of the marital assets was equitable. Accordingly, we affirm.

## I.  Background Facts and Proceedings

Sinclair and Morr married September 19, 2009, in Las Vegas, Nevada. They each owned a home when they began living together in 2005. Morr's house became the marital residence, while Sinclair sold his home.

Sinclair derived most of his net worth from the sale of his home and several business ventures. From his home sale, Sinclair received approximately $40,000 in net equity. He used that $40,000 to purchase a building, the subsequent sale of which netted $40,000 in proceeds in 2007. In addition, Sinclair had significant savings from a disability settlement with a former employer, a judgment against Louie's Floor Covering, and some equity from the sale of a bar he had owned. He was self-employed installing floors at the time of the marriage. The parties dispute whether Morr asked Sinclair to abandon the flooring business, as Sinclair asserts, or whether the business failed, as Morr asserts. Also contributing to his net worth, Sinclair owned a number of vehicles and a long list of high-value tools due to his many business ventures. In early

2012, Sinclair bought the Russell School property in Russell, Iowa for $2000. Morr asserts Sinclair had discussions with a potential buyer about selling the property for $35,000, but that sale has not come to fruition.[1]

Morr's net worth is largely tied to gifts of rental property received from family members, her home ownership, and her employment. Morr was employed as a teacher. She also managed three rental properties—one owned by her father (on East Ilion) and two received as gifts from her grandfather and mother (on 118 S. 8th and 126 S. 8th). Her father compensated her for managing the East Ilion apartments.[2] Morr also owned a 2004 BMW which Sinclair had transferred to her as compensation for her work cleaning up an estate property. She also owned a Ford Explorer valued at $1000. Finally, her wedding and engagement ring set was appraised at $8268.[3]

While Morr owned property at the time of the marriage, she also had significant credit card debt—estimated at between $32,000 and $50,000. The parties agree Sinclair used some of his savings to help Morr pay down her credit card debt, but they disagree as to the extent of his contribution. Sinclair alleges he paid more than $50,000 toward her debts. Morr alleges Sinclair effectively paid $24,500 because he also used Morr's cards to make purchases. Sinclair

---

[1] Morr reports she wants nothing to do with the property due to its potential tax liabilities and liens.

[2] Sinclair claims he worked full-time on maintenance and upkeep at the three apartment complexes after his flooring business ended and was not sufficiently compensated for his work. Morr acknowledges Sinclair did, in fact, spend time maintaining the three apartment complexes but claims he was more than adequately compensated for his work.

[3] Sinclair, without Morr's permission, sold the wedding ring set for $3500.

bases his calculations on the alleged payment of an additional $21,000 to Morr in the form of a cashier's check. In district court his only evidence of this $21,000 payment to Morr was a series of un-sent personal checks and a bank account statement reflecting a $21,000 withdrawal. The court was unconvinced the $21,000 was actually spent to pay down Morr's debt.

In its ruling, the court awarded Sinclair the Ford F-150 truck, the cargo truck, four vans, the John Deere tractor mower and snow blade, the log splitter, the commercial grill, the jet ski, his tools and equipment, the 1999 Jeep Wrangler he bought for his daughter, a 2007 carpet cleaning van, a cutter machine and brake, his personal and business bank accounts, other personal effects, and the Russell School property. The court awarded Morr her IPERS pension, the marital home, her two vehicles, and the household goods remaining in the home. The court also determined Morr's rental properties were not part of the marital estate. The court assigned Morr all of the outstanding credit card debt. Because the above awards were disparate in value, the district court ordered Morr to transfer $25,000 in a property equalization payment to Sinclair.

Dissatisfied with the discrepancy in distributions, Sinclair now appeals.

## II. Discussion of Distribution

Iowa is an equitable distribution state. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). "Equitable" does not necessarily mean "equal," though an equal distribution is often the most equitable outcome for both parties. *See id.* In the case of Morr and Sinclair, who were married for less than four

years, equity does not demand an equal property division, despite Sinclair's assertions.

We defer to the district court's findings of fact and credibility despite the de novo nature of our review. *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). This deference relates to the district court's ability to observe the demeanor of the parties and witnesses during their testimony. *See* Iowa R. App. P. 6.904(g). But we are not bound by the district court's findings. *Id.*

On appeal, Sinclair values the court's total distributions at $351,286 for Morr and $52,000 for himself. Morr, on the other hand, values the total distributions for herself at $33,694 and $69,850 for Sinclair. The parties value the marital property as follows:

| Item | Sinclair's calculation | Morr's calculation |
|---|---|---|
| Household contents | $33,000 (to Morr) | $30,000 (to Morr) |
| Ford Explorer | $1000 (to Morr) | $1000 (to Morr) |
| BMW | $10,000 (to Morr) | $10,000 (to Morr) |
| IPERS | $34,000 (to Morr) | $34,103 (to Morr) |
| Real estate | | |
| Home | $145,000 (to Morr) | N/A |
| Rental properties | $158,976 (to Morr) | N/A |
| Fencing materials | N/A | $5000 (to Morr) |
| Yard tools | N/A | $350 (to Morr) |
| Engagement ring set | N/A | $8000 (to Sinclair) |
| Jeep Wrangler | N/A | $9350 (to Sinclair) |
| Russell School | $2000 (to Sinclair) | $2000 (to Sinclair) |
| Tools | $25,000 (to Sinclair) | $25,500 (to Sinclair) |
| Equalization | $25,000 (to Sinclair) | $25,000 (to Sinclair) |
| **Debts** | | |
| Credit card | $30,690 (to Morr) | $24,210 (to Morr) |
| Construction | N/A | $2500 (to Morr) |
| Student loans | N/A | $20,094 (to Morr) |
| **Total** attributed to Sinclair | $52,000 | $69,850 |
| **Total** attributed to Morr | $351,286 | $33,649 |

Neither party fairly characterizes the district court's distribution. Most glaringly, Sinclair erroneously includes the value of the rental properties in Morr's awards.[4] Meanwhile, Morr fails to include the value of her home. Rather, the following chart breaks down the court's valuation and distribution:

| Morr | Value | Sinclair | Value |
|------|-------|----------|-------|
| Real Estate | | Real Estate | |
|   Home | $145,811 |   Russell School | $2000 |
|   Rental Prop. | $0 | Wrangler | $9300 |
| BMW | $10,000 | 2007 Van | $4700 |
| Household items | $30,000 | Engagement Set | $8000 |
| IPERS[5] | $34,000 | Tools and Equip. | $25,000[6] |
| Ford Explorer | $1000 | Equalization | $25,000 |
| Fencing mat. | $5000 | Tools Dissipation | $21,000 |
| Misc. equip. | $350 | | |
| Credit payments | $22,000 | | |

---

[4] The district properly excluded the rental properties from the marital estate because they were gifts to Morr alone. *See Schriner*, 695 N.W.2d at 496 (discussing Iowa's hybrid system that permits courts to divide gifted property only if equity demands). As the court noted, if a marriage lasts a short time, the claim of either party to property gifted to the other is minimal at best. *See In re Marriage of Liebich*, 547 N.W.2d 844, 850 (Iowa Ct. App. 1996). Moreover, Sinclair does not claim any special relationship with Morr's relatives who gave her the rental properties. The parties dispute whether the buildings appreciated in value and in rental income as the result of Sinclair's efforts, but the district court reasonably found no significant appreciation to credit to Sinclair.

[5] The district court valued Morr's IPERS at its total value of $125,000. Both parties agreed the approximate accrual value of the pension during the marriage was about $34,000. We have included the parties' agreed-upon value in this calculation.

[6] The parties vigorously dispute the value of the tools and equipment remaining in Sinclair's possession. He claims the total value is no more than $10,000 while Morr claims the total value is nearly $85,000. The district court valued the remaining tools and equipment at $25,000, noting Sinclair had reason to undervalue his remaining possessions and Morr's valuation used the new, retail value of Sinclair's *used* tools and not a more-reasonable, used-tool value. We see no reason to disturb the court's valuation.

| Morr[7] | Debts | Sinclair | |
|---|---|---|---|
| Credit debt | -$24,209 | | $0 |
| Construction | -$2500 | | |
| Prop. Equalization | -$25,000 | | |
| | **Total** | | **Total** |
| | $196,452 | | $95,000 |

Three primary considerations explain the difference in distribution.[8] First, Morr held significantly more net assets at the time of the marriage than did Sinclair—in her estimation greater than six times more. Second, Morr earned substantially more income than Sinclair during the marriage. Third, the marriage was of short duration and both parties are in a position to be self-sufficient going forward.

Sinclair disagrees that those reasons justify the division in the decree. Of particular concern for Sinclair is the alleged failure of the district court to acknowledge his contributions during the marriage to the value of Morr's real estate parcels. Sinclair alleges the parties spent more than $140,000 to remodel the home and rental properties, but he did not receive compensation in the decree for his contributions.

The district court determined Sinclair was "fully reimbursed" for his labor. As the decree notes, Sinclair failed to document his expenditures and Morr's

---

[7] Morr entered the marriage with an obligation to pay her son's student loan debt. Sinclair never accepted responsibility for any of the debt. The district court did not assign any of the student loan debt to Sinclair. We concur and assign the student loan debt with which Morr entered the marriage to Morr as she leaves the marriage. As such, the student loan debt does not appear in the court's calculation of the marital estate as it was not considered by either the district court or us.

[8] The district court must first identify and value the divisible property and then must equitably distribute those assets. *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013). The court does so by considering the factors in Iowa Code section 598.21 (a)–(m) (2013). *Id.*

alleged failure to compensate him. In contrast, Morr did document a number of instances of reimbursement to the satisfaction of the district court, as well as this court. Her documentation showed Sinclair was properly reimbursed for his expenditures—both monetary and labor. Given no evidence to the contrary, "we consequently defer to the judgment of the district court." *Sullins*, 715 N.W.2d at 251 (citing *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003)). We agree Sinclair was properly reimbursed and is not entitled to additional credit for maintenance and remodeling.

We further conclude the district court's overall distribution of the couple's assets is supported by the fact Sinclair dissipated some of the assets post-separation, including some of his tools and Morr's wedding ring set. *See Kimbro*, 826 N.W.2d at 701 ("A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution."). For those items, the court set a value and awarded the items to Sinclair ($21,000-tools and $8000-rings). *See id.* ("If improper loss occurs, the asset is included in the marital estate and awarded to the spouse who wasted the asset.")

Additionally, Sinclair was awarded the Russell school property free of any interest Morr may have had in the property. While the district court valued the property at $2000, there is some evidence in the record the property is actually worth more than Sinclair paid for it, a factor which would further equalize the court's distribution of assets.[9]

---

[9] The district court declined to assign additional value to the property absent reliable evidence, saying to do so would be "resorting to speculation."

In this case, the distribution of assets is driven by the short duration of the marriage. *See* Iowa Code § 598.21(5)(a). Had the couple been married longer and depended more upon one another for their respective livelihoods, the outcome may have been different. *See Kimbro*, 826 N.W.2d at 704 (ruling a seventeen-year marriage "establishes sufficient commitment to award an equal division of property"); *In re Marriage of Fenelly*, 737 N.W.2d 97, 104 (Iowa 2007) (ruling an equal division of the appreciation of premarital assets is equitable in a fifteen-year marriage). But this was a less than four-year marriage where both parties depart with the tools to be self-sufficient.

In conclusion, considering all the circumstances and relying heavily on the district court's ability to observe the demeanor of the witnesses, we believe the distribution scheme is equitable. The parties leave their short marriage with their remaining premarital property and debt. A marriage is the intertwining of lives, but when it unravels quickly, Iowa law does not require a down-the-middle division of pre-marital property. Rather, our law strives for an equitable outcome for both parties. We believe the decree here achieves a fair division of the parties' assets.

**AFFIRMED.**