# IN THE COURT OF APPEALS OF IOWA

No. 16-0759
Filed June 21, 2017

IN RE THE MARRIAGE OF MBONGYA SALEHE
AND FITINA CHARLOTTE

Upon the Petition of
MBONGYA SALEHE,
        Petitioner-Appellee,

And Concerning
FITINA CHARLOTTE,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.


        A former wife appeals the economic provisions of the decree dissolving

her marriage. **AFFIRMED.**


        Agnes G. Warutere of Warutere Law Firm, P.L.L.C., Clive, for appellant.

        Mbongya Salehe, appellee pro se.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

This divorce appeal involves Iowa residents who married twenty years ago while living in central Africa. Fitina Charlotte challenges the decree dissolving her marriage to Mbongya Salehe, claiming (1) the court inequitably divided marital property, (2) Salehe dissipated marital assets, (3) she is entitled to reimbursement alimony, and (4) she should receive all, not just a portion, of her trial attorney fees. Charlotte also seeks appellate attorney fees. Recognizing the district court's superior ability to observe the parties and evaluate their credibility, upon our de novo review, we affirm. We also decline Charlotte's request for appellate attorney fees.

### I.    Facts and Prior Proceedings

In June 1996, the parties were married in the country currently known as the Democratic Republic of Congo. Because war broke out soon after their marriage, the parties fled to a refugee camp in Tanzania and did not live together continuously. In 2008, Charlotte moved to the United States with her two children.[1] Salehe stayed in Tanzania and studied to be a teacher, although he did not complete the program. Two years later, Charlotte helped Salehe relocate to the United States. Salehe lived with Charlotte and her two children in central Iowa for about eighteen months before he moved to a separate residence.

Both parties are employed at Tyson Foods, with Charlotte earning $33,000 and Salehe earning $43,800 in 2015.[2] Charlotte testified she added

---

[1] The parties agree Salehe is not the children's biological father; the parties did not litigate custody or child-support issues at trial or on appeal.
[2] Neither party is fluent in English; each relied on a translator at trial. Charlotte asserts Salehe has better language skills and a more advanced education than she does.

Salehe's name to a joint checking account and they divided some expenses, but he devoted his earnings to helping his family members move from the refugee camps to Kenya.

On March 12, 2015, Salehe filed a petition to dissolve the marriage. The case proceeded to trial on March 14 and 30, 2016, and the court entered a dissolution decree on April 6, 2016.

Charlotte now appeals. Salehe declined to file an appellee's brief.

## II. Scope and Standards of Review

We review the challenge to the dissolution decree de novo. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and decide anew the legal and factual issues properly presented. *See In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). But "we recognize that the district court was able to listen to and observe the parties and witnesses." *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009). Consequently, we give weight to the district court's findings of fact, especially when considering witness credibility, but we are not bound by them. *See In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We will disturb the district court's ruling only when there has been a failure to do equity.

### III.    Distribution of Marital Property

Marriage partners are entitled to an "equitable share of the property accumulated through their joint efforts." *In re Marriage of Liebich*, 547 N.W.2d 844, 849 (Iowa Ct. App. 1996). Courts dividing marital property consider the factors in Iowa Code section 598.21(5) (2015). The division does not need to be equal or follow a certain percentage; rather, the court should make a just award under the circumstances. *In re Marriage of Hoak*, 364 N.W.2d 185, 194 (Iowa 1985). We discuss each of Charlotte's challenges in turn.

### A. Equalization Payment

Charlotte contends the court's award of the 2002 Mercury Sable to Salehe was inequitable. She points out Salehe bought the car using marital funds—the parties' 2011 joint tax refund. She seeks an equalization payment of $2964.50 (half the tax refund) or of $2000 (half the value of the Mercury).

Charlotte's financial statement showed that she retained a bank account with a balance of $5000. According to Salehe's financial statement, he had two bank accounts in his name with balances totaling $1100.[3] The court awarded each party their separate accounts. As for vehicles, the court awarded a 2007 Jeep to Charlotte, whose financial statement valued that vehicle at $5000 with no debt. The court awarded the 2002 Mercury (valued at $4000) and a 2005 Honda Pilot (valued at $13,000 with $9000 debt) to Salehe. By our calculation, Charlotte received assets worth $10,000 ($5000+$5000), while Salehe received assets of $9267 ($4000+$4000+$1100+$167), as well as significant debt. Given

---

[3] Salehe also borrowed $4000 from his retirement account that he is repaying each week, leaving his current balance at $167.

this division of the marital estate, we do not believe requiring Salehe to make an equalization payment would be equitable.

## B. Dissipation of Marital Assets

According to evidence presented at trial, after Salehe and Charlotte had separated, Salehe traveled to Maryland to participate in a "promise" or engagement ceremony with another woman. They rented a hall, served food, and hosted numerous guests. Charlotte alleges Salehe's expenses relating to this ceremony constituted a dissipation of marital assets in the amount of $2000.

In making a property distribution, "it is proper for the court to consider a person's dissipation of assets." *In re Marriage of Olson*, 705 N.W.2d 312, 317 (Iowa 2005). We consider "whether the alleged purpose of the expenditure is supported by the evidence, and if so . . . whether that purpose amounts to dissipation under the circumstances." *See In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007) (citation omitted).

At trial, Salehe testified he paid about $500 for transportation and his new girlfriend paid the remaining expenses associated with the ceremony. The girlfriend testified she paid $500 in connection with the event. The district court found no evidence to refute the girlfriend's contention and found Charlotte's allegation of dissipated marital assets too speculative to accept. Upon our de novo review of the record and giving appropriate deference to the district court's credibility determinations, we affirm the rejection of the dissipation claim.

## IV. Reimbursement Alimony

Charlotte contends the court should have granted her reimbursement alimony, asserting Salehe's "ability to earn an income was a direct result of

[Charlotte] extending an invitation to him to join her in the [United States] and using her finances to support his settlement."

Alimony "is a stipend to a spouse in lieu of the other spouse's legal obligation for support." *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993). Alimony is not an absolute right; an award depends upon the specific circumstances of each case. *See In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). Reimbursement alimony is appropriate in "marriages of short duration . . . devoted almost entirely to the educational advancement of one spouse and yield[ing] the accumulation of few tangible assets." *In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa 1989).

Charlotte is not a spouse who sacrificed so Salehe could obtain an educational degree and who is now "precluded from enjoying the anticipated dividends the degree" will provide. *Id.* at 63 (citation omitted); *see also In re Marriage of Probasco*, 676 N.W.2d 179, 186 (Iowa 2004) (declining request for reimbursement alimony where the marriage was not "devoted almost entirely to the educational advancement of one spouse"). Contrary to Charlotte's position, reimbursement alimony is not appropriate here.

## V.    Attorney Fees and Costs

Charlotte incurred $4296 in trial attorney fees. The district court ordered Salehe to pay $1250 toward those fees at the rate of $150 per month.[4] The court would not enter judgment on the fee award as long as Salehe made his payments. The court also ordered each party to pay half of the court costs. On

---

[4] In addition, the district court ordered Salehe to pay half the rent for the parties' leased residence through the date of the decree.

appeal, Charlotte contends the court abused its discretion by not requiring Salehe to pay all of her attorney fees and court costs.

The district court's award of attorney fees and costs is discretionary and will not be disturbed absent an abuse of discretion. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983). Given the parties' relative incomes, we are unable to conclude the district court abused its discretion in ordering Salehe to pay about 30% of her legal bill.

Charlotte also seeks appellate attorney fees. Such an award is not a matter of right but rests in our discretion. *See McDermott*, 827 N.W.2d at 687. In exercising our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (citation omitted). While Salehe's annual income is about 25% higher than Charlotte's income, both parties live modestly, and Charlotte was not successful on appeal. Accordingly, we decline to award appellate attorney fees. Costs of the appeal are divided equally between the parties.

**AFFIRMED.**