**IN THE COURT OF APPEALS OF IOWA**

No. 21-1998
Filed December 21, 2022

**IN RE THE MARRIAGE OF DEREK W. GEORGE**
**AND DEBRA A. GEORGE**

**Upon the Petition of**
**DEREK W. GEORGE,**
    Petitioner-Appellee,

**And Concerning**
**DEBRA A. GEORGE,**
    Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Wayne County, Thomas P. Murphy,

Judge.

        Respondent in a dissolution appeals from the distribution of assets.

**AFFIRMED AS MODIFIED.**

        Donna R. Miller of Miller, Zimmerman & Evans, PLC, Des Moines, for

appellant.

        Bryan J. Goldsmith and Carly M. Schomaker of Gaumer, Emanuel,

Carpenter & Goldsmith, P.C., Ottumwa, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

After resolving most of the issues involved in dissolving her marriage to Derek George, Debra George draws our attention to the dispute over her inherited property. Debra maintains the district court improperly resolved the issue and, thus, the equalization payment to be paid to her was too low. She appeals from the property distribution. Debra also requests appellate attorney fees. She maintains the property distribution should not have included money she was gifted or inherited as a child, but the district court found that the funds were comingled in such a way it would be unfair to separate them from the marital property. Because we agree with Debra that certain expenditures from these funds maintained their identity as gifted and inherited funds and should not have been included in the property distribution, we modify that portion of the property distribution.

**I. Background Facts and Procedural History.**

Derek and Debra married in 1998 and together have four children. Debra's father passed away when she was still an infant; because he was employed by the Internal Revenue Service at the time, Debra received payments from a federal civil service survivor annuity. After her husband's death, Debra's mother also received social security survivor benefits while Debra was still a minor; she used what was necessary to care for Debra but invested the excess in Debra's name.[1] Because Debra's mother had no obligation to save these benefits, Debra considered the transfer of those monies to her a gift. Before the marriage, Debra also inherited

---

[1] A 1998 statement maintained by Debra's mother showed the investments totaled $315,241.03, but the district court only listed one asset, the Uniform Transfer to Minors 1998 account fund, with a balance of $177,259.52 in its ruling.

$7996.92 from a family member's estate, which her mother managed and invested pursuant to a guardianship. Two of the investments in these accounts were a Fidelity IRA and 110 shares of American Electric Power. The ownership and character of these investments have not changed since before the marriage, but the value has. At the time of the marriage, these were worth $5163.82 and $5390 respectively; they were worth $4906 and $8430 respectively at the time of the dissolution trial. The stock also paid dividends throughout the marriage. Debra's mother continued to manage the funds until the end of 2008.[2] All in all, Debra argued she brought over $315,000 of gifted or inherited funds into the marriage while Derek only had a truck.

Over the course of their marriage, Debra used portions of these funds. She put a $22,000 down payment on the couple's home and paid $7000 to buy an adjoining lot. The couple eventually sold both, and the proceeds went into a joint bank account before being used to build a home, where Debra still lived at the time of dissolution. The couple owned four pieces of farmland—Dotts 70, Dotts 60, Brown, and Core. Debra also used some of her inherited or gifted funds for a $7500 down payment on Dotts 60 in 2002 and, in 2007, paid off the parcel's remaining $44,000 debt. With these same funds, she also invested $20,000 in gold and silver[3] and put $5000 towards her law firm. Both Derek and Debra maintained separate accounts over the years of the marriage.

---

[2] The district court considered these gifted and inherited funds, which no party appealed.
[3] The trial value of the gold and silver was $17,883.

Core was a part of Derek's family farm. When Derek's parents divorced, Derek and his father formed a limited liability company (LLC) that held Core; Debra contributed $248,042.38 of her gifted or inherited funds to Core's mortgage in 2009. Derek and Debra later sued Derek's father for a breach of fiduciary duties and the LLC was dissolved. In the proceeding dissolving the LLC, the court treated the payment as a capital contribution by Debra and transferred an additional 119.6 acres of farmland to Debra and Derek over and above the land received to satisfy their interest in the LLC.

Derek filed for dissolution in 2019. As noted, Derek and Debra agreed to most things, including the care and custody of their children, the distribution of the four farm parcels, farm equipment, Derek's retirement accounts, and the marital home. But the couple asked the court to determine (1) the value and building debt of Debra's law firm and abstracting business, (2) how to handle Debra's Fidelity IRA, American Electric Power stock, and the gold and silver; (3) what, if any, amount should be set aside as Debra's for contributions from her gifted and inherited funds; and (4) how to value a lawn mower that had recently caught fire. All of these disputes impacted any equalization payment necessary between the couple.

On a worksheet exhibit, Derek laid out the asset distribution the parties agreed on and also included funds Debra claimed were inherited and gifted. Under his distribution plan, a fair equalization payment—before the consideration of any inherited or gifted property or tax implications—would be $432,451, or half of the difference between Derek and Debra's retained equity. Taking into account adjustments for capital gains implications on both the land and the equipment, this

number dropped to $298,717. But, Derek agreed at trial that the proper number was probably closer to the $432,451 figure because he did not plan on selling the land. He also testified he planned on selling the equipment, but not for the purposes of paying Debra any required payment. Both of these numbers were subject to change based on how the district court came out on the disputed issues. Debra, however, maintained that her contributions from any gifted or inherited funds should be separated from any determination of an equitable property division. She provided her own calculations showing the gifted or inherited funds that should be set aside to her and requesting various versions for an equitable split of marital property. Noting that Debra's funds advanced the joint interests of the parties, the district court determined that Debra's inherited and gifted funds "became so invested in marital assets" that the court could not "fully compensate" her for those contributions. So instead the court did not address the payments but did increase the equalization payment to Debra to $450,000. Debra filed a motion to enlarge, pursuant to Iowa Rule of Civil Procedure 1.904, asking the court to determine what assets were inherited and gifted and exclude them from the property division; the district court summarily denied the motion. Debra now appeals.[4]

---

[4] We review equity actions involving the dissolution of a marriage de novo, examining the whole record anew and giving weight to the district court's credibility findings, but we "disturb the district court's 'ruling only when there has been a failure to do equity.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (citation omitted).

**II. Discussion.**

As a basic failure, Debra takes issue with the district court's initial categorization of the assets. To her point, the district court often referred to the funds that were gifted or inherited by Debra before the marriage as her "premarital funds."[5] But, while "premarital funds" are properly part of the property divided in a dissolution proceeding, Iowa Code section 598.21(5) and (6) (2019) require us to exempt inherited and gifted property from the typical property division in a dissolution unless doing so would be inequitable. *See In re Marriage of Wallace*, 315 N.W.2d 827, 831 (Iowa Ct. App. 1981) ("Our obligation to respect and give effect to the wishes of those who convey gifts and bequeath inheritances demands of us that those wishes not be rendered nugatory by the mere fact that the intended recipient happens to be married.").

In Debra's view, the specific assets in question are her contributions to the farmland, investments in the family's first home and adjacent land, investments in her businesses, the American Electric Power stocks, her Fidelity Rollover IRA, and the gold and silver. Contrary to the district court's use of the terms "premarital funds," Debra characterizes the funds used as gifted and inherited assets and maintains that there is no difficulty in separating the assets from others because she simply asked for reimbursement. To achieve equity, we explore which characterization is correct and if we can separate those amounts to afford her the benefit of the donor's intent.

---

[5] Unlike gifted or inherited property, premarital property is included in the divisible estate. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

The comingling of inherited or gifted funds with marital assets is not enough, alone, to require the property to be divided as a marital asset. *In re Marriage of Liebich*, 547 N.W.2d 844, 851 (Iowa Ct. App. 1996). Instead, we look to a variety of factors to determine if equity demands such division, including:

> (1) contributions of the parties toward the property, its care, preservation or improvement[];
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter[,] which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*McDermott*, 827 N.W.2d at 679 (alterations in original) (citation omitted).

Considering this case's specific circumstances, we recognize that the money in Debra's separate accounts largely accumulated because of her mother's smart stewardship, which lasted into the couple's marriage. In fact, most of the purchases made from these funds occurred before Debra's mother relinquished control of the accounts in 2008.[6] There is also no dispute that there was no special relationship between Derek and Debra's father or aunt, and Derek posits no special need. Both parties worked and contributed economically to the marriage, and it was mostly these incomes that maintained the couple's lifestyle rather than Debra's separate funds. Debra has stated that she has special need for the funds

---

[6] Derek stated at the dissolution hearing that he had gotten some investment advice in 2008 or 2009 when he saw the looming housing crisis—specifically to take the money out of the stock market, allowing them to spend the money to purchase the Core farm. But this did not contribute to the growth of that money or the initial investment.

to be returned because she is self-employed and has a different ability to save for retirement than Derek. Derek failed to show any factor that would make setting aside the gifted and inherited funds to Debra inequitable.

Overall, we find these factors point to exempting the funds from the property division as part of the dissolution. But it would not be equitable to make a blanket statement considering the differing circumstances of each withdrawal Debra raises; instead, we evaluate each separately.

*Accounts and Assets Easily Traced.*

As a part of funds her mother invested for Debra, the American Electric Power stocks and the Debra's Fidelity IRA have been maintained as they existed pre-marriage. The values of these assets at the time of trial should be set aside to Debra and not considered in the calculation of her share of the marital property division. The same can be said of the gold and silver, which was an investment the couple agreed to but one where gifted funds paid for the investment. Thus the stock value ($8430), the Fidelity IRA value ($4906), and the value of the gold and silver ($17,883) should be set aside and not considered in the division of the marital property.

*Monies Spent on the Farms.*

Debra requests that she be given credit for payments made from her premarital gifts and inheritance towards two farm properties. Specifically, we examine here the $248,042.38 down payment on Core and the $7500 down payment and subsequent payoff of the $44,000 debt against Dotts 60. Contrary to the district court, we find these payments are easily traceable. *See In re Marriage of Sterner*, No. 18-0409, 2019 WL 1057304, at *4 (Iowa Ct. App. Mar. 6,

2019) (finding although the husband used inheritance funds to pay off the farm mortgage on jointly held property, "the use of the inherited funds [was] traceable and the property was still in the possession of parties at the time of dissolution;" and affirming the court's determination the inherited funds should be set aside prior to the property division). Here, not only was the money easily traced to the enhancement of the equity in the farmland, in the case of the Core property, in the earlier proceeding regarding the LLC, the court specifically set farmland aside to Debra and Derek to reimburse Debra for her $248,042.38 contribution. We believe the payments made by Debra for the farmland should be set aside as assets to return to Debra and should not factor in to the division of marital assets.[7]

*Contributions by Debra to the Family Homes and Her Business.*

Debra requests that the gifted and inherited funds used as a down payment on her and Derek's first home ($22,000) and the purchase of the adjoining lot ($7000), along with a payment to buy into the law firm ($5000) also be set aside and removed from the marital property pool. But as to the money Debra spent on the family's home, the house has since sold and, after placing the monies in a joint account, funds were then used to build a new home. Debra was awarded that home and there is little record tracing the funds through time. As for the law-firm investment, that payment is minimal and, because Debra was awarded the

---

[7] Debra also asks that we set aside the growth on her investment in the farmland. Our supreme court has stated that because "[d]ecisions on how to use property during the marriage, including inherited property, bear most of the characteristics of a family decision," "the resulting appreciation or loss may be characterized as marital property." *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995). As that growth is all part of the value of the farmland, which was distributed pursuant to Derek and Debra's agreement, we address only the initial investments.

business property, we will not set that sum aside. For these reasons, Debra's investments in the family homes and her business will not be set aside for her.

*Final Calculation.*

Taking these figures into account, as well as the values the district court placed on various assets that the parties do not dispute, Debra's portion of net divisible marital property is $973,588.62 compared with Derek's $2,225,981. Although Derek asked the district court to consider the capital gains impact on sale of the equipment, losses involving the equipment as calculated by his expert appraiser. And, as in many cases involving potential sales of assets being divided, each party would have capital gain concerns if sales of the property were required. *See* Iowa Code § 598.21(5)(j) (directing courts to consider tax consequences when dividing property). And, Derek admitted he had not looked into his loan options, whereas Debra testified she spoke to their current farm lender, which was willing to lend more than three million dollars as long as the farm had cash flow. In interpreting section 598.21(5)(j) in the past, our supreme court has determined that where the court does not force the sale of property or order a lump-sum payment that would require the sale of property, a property distribution should not account for such tax implications. *See McDermott*, 827 N.W.2d at 684 (forgoing accounting for tax implications when the court did not require farmland to be sold, the party did not have the intention of selling the farmland, and "had the financial ability to take a mortgage out on the property to pay the equalization payment"). Because it did not appear that Derek would have to sell the equipment or land to make the lump-sum payment ordered by the court, we do not credit him for those capital gains.

With these adjustments, and following the plan Derek and Debra asserted at trial of paying Debra half of the difference between her and Derek's retained equity, we find Derek shall pay Debra an equalization payment of $626,196.19.[8]

*Appellate Attorney Fees.*

Finally, Debra asks for appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion," and we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* at 687 (citations omitted). In light of these factors, we decline to award Debra appellate attorney fees.

**III. Conclusion**.

We affirm the district court's dissolution decree apart from the exemption of inherited and gifted property, which changes the equalization payment of the property division to Debra to the sum of $626,196.19. We decline to award appellate attorney fees.

**AFFIRMED AS MODIFIED.**

---

[8] After totaling the assets properly awarded to each party, Derek was awarded $2,381,600; Debra, for her part, was awarded $1,635,175. Subtracting their liabilities, $155,619 for Derek and $362,044 for Debra, and the $299,542.38 traceable from Debra's gifted or inherited funds we find Derek was awarded $2,225,981.00 in marital property while Debra will walk away with $973,588.62. So, a fair equalization payment from Derek to Debra is $626,196.19.