# IN THE COURT OF APPEALS OF IOWA

No. 23-1965
Filed August 20, 2025

IN RE THE MARRIAGE OF SUZANN ELSIE MARIE RAVELING
AND ROBERT HENRY RAVELING

Upon the Petition of
SUZANN ELSIE MARIE RAVELING,
　　　　Petitioner-Appellee,

And Concerning
ROBERT HENRY RAVELING,
　　　　Respondent-Appellant.

_____

　　　　Appeal from the Iowa District Court for Carroll County, Adria Kester, Judge.


　　　　A respondent appeals the property-division and spousal-support provisions of the decree dissolving the parties' marriage. **AFFIRMED.**


　　　　Theodore R. Wonio of Rasmussen, Nelson & Wonio, P.L.C., Atlantic, for appellant.

　　　　Robert J. Engler of Cambridge Law Firm, P.L.C., Atlantic, for appellee.


　　　　Considered without oral argument by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

After twenty years of marriage, Suzann Raveling petitioned to dissolve her marriage to Robert Raveling.  Though the parties were able to find common ground on many issues during the proceeding, they could not agree on whether to divide the proceeds from the marital home and the amount of spousal support.  The district court ultimately issued a decree dissolving their marriage, splitting the proceeds from the marital home, and awarding Suzann $650 per month in traditional spousal support after Robert's child-support obligation ends.  Robert now appeals those provisions of the decree, and we affirm.

First, while the marital home was indeed purchased in part with inherited funds, allocating all remaining proceeds to Robert would be unfair to Suzann.  The parties intended for the home to serve as their joint retirement nest egg, they resided in the home for nearly thirteen years, and Suzann contributed to the home's substantial increase in value—keeping it well maintained and overseeing improvements.  Thus, we agree it would be inequitable to exclude the proceeds from the marital estate.  Second, $650 in traditional spousal support is equitable given the parties' twenty-year marriage, Suzann's diminished income due to a disability she suffered during the marriage, and Robert's greater financial position leaving the marriage.  And finally, because Suzann successfully defended the decree in this appeal, has less ability to pay for attorney fees, and requested a reasonable sum, we award her $3000 in appellate attorney fees.

### I. Factual Background and Proceedings

Long "before online dating was cool," Robert and Suzann met in an internet chatroom. Their relationship transitioned offline, and they married in July 2002. They welcomed a daughter later that year and a son in 2008.[1]

About six years into the marriage, Robert inherited an interest in farmland. The couple wanted to build a nest egg for retirement, so they agreed to sell the farmland in 2010 and buy a home. For the next thirteen years, the couple resided in the home together. During this time, Suzann kept the home in good condition and initiated improvement projects. And the home's value ultimately increased from $180,000 to $300,000 between 2010 and 2023.

For most of the marriage, both parties worked full time. At some point Suzann suffered a back injury, and by 2021, the injury became permanently disabling and rendered her unable to work. She currently receives $1039 in monthly disability benefits, as well as an additional $345 as a dependent benefit for their son. Robert also experienced health issues during the marriage, undergoing prostate cancer treatment in 2022. By the fall of 2023, Robert's cancer was in remission and he was working full time as an animal caretaker.

Suzann petitioned to dissolve the marriage in October 2022. While the dissolution proceedings were pending, the couple sold the marital home and agreed to each receive $32,000 and place the remaining $70,132.57 in proceeds in a trust account pending ultimate distribution by the court.

---

[1] Both Robert and Suzann also had children from prior relationships.

After a one-day trial, the district court issued a decree dissolving the parties' marriage. Relevant here, the court equally divided the remaining proceeds from the home, finding Robert's inheritance had been "commingled with marital property" to such a degree that it lost its "character" as an inheritance. And the court ordered Robert to provide traditional spousal support to Suzann in the amount of $650 per month after their son is no longer eligible for child support. Robert now appeals.

## II. Property Division

Robert first challenges the district court's equal distribution of the proceeds from the marital home. We review a decree's division of property de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). When dissolving a marriage, courts "shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5) (2022). We will only disturb a decree's division when it fails to do equity, and what is equitable "depends upon the circumstances of each case," as guided by the factors in Iowa Code section 598.21(5). *Hansen*, 733 N.W.2d at 702. And "[a]n equitable division is not necessarily an equal division." *Id.*

Inherited property is generally exempt from distribution unless "refusal to divide the property is inequitable to the other party." Iowa Code § 598.21(6). When considering whether to divide inherited property, we generally consider: (1) the parties' respective contributions "toward the property, its care, preservation or improvement"; (2) the relationship between the donor and other party; (3) any "separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them"; (4) the special needs

of the parties; and (5) any other factors that "would render it plainly unfair" to exclude the inherited property from division. *In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2002).

Relevant here, the mere commingling of inherited and marital assets alone is not enough to mandate the inherited property be divided as part of the estate. *In re Marriage of Liebich*, 547 N.W.2d 844, 851 (Iowa 1996). But our analysis must still account for "the length of the marriage" and whether "the parties have enjoyed, over a lengthy period of time, a substantial rise in their standard of living as the result of gifts or inheritances." *Goodwin*, 606 N.W.2d at 319–20; *see also In re Marriage of Wallace*, 315 N.W.2d 827, 831–32 (Iowa Ct. App. 1981).

Against this backdrop, we agree with Suzann that it would be inequitable not to divide the $70,132.57 in proceeds between the parties. Both Robert and Suzann signed the warranty deed conveying the inherited farmland in 2010. The proceeds were deposited into their joint account and were used for a down payment on their marital home. Robert and Suzann are both on the title to the home, and during the marriage they repeatedly borrowed against the home to cover marital expenses including credit card debts, home improvements, and a study abroad program in Japan for their daughter. For nearly thirteen years, Suzann kept the home in good condition and oversaw improving the home's roof, siding, driveway, and sidewalks. And her efforts proved fruitful—the home increased in value by roughly $120,000 during the marriage. Thus, we agree with the district court that the balance of equities tips toward dividing the home's proceeds. *See In re Marriage of Rogers*, No. 16-1571, 2017 WL 4842306, at *3–4 (Iowa Ct. App. Oct. 25, 2017) (affirming division of inheritance when the funds were

used to purchase the marital home and other spouse contributed toward its "care and preservation"); *In re Marriage of Soloski*, No. 05-0310, 2006 WL 623583, at \*5 (Iowa Ct. App. Mar. 15, 2006) (requiring equitable division of a gift that was used as a down payment on the marital home and invested in a real estate partnership during a nearly thirty-year marriage).

### III. Spousal Support

Robert next argues the court erred by awarding traditional spousal support in the amount of $650 per month after his child-support obligation ends. As with the property division, we review a spousal-support award de novo. *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023). But we defer to the district court's "important, but often conjectural, judgment calls" and must not engage in "undue tinkering" with the award on appeal. *Id.* at 182–83 (cleaned up). And so, we will "disturb the district court's determination of spousal support only when there has been a failure to do equity." *Id.* at 182 (cleaned up).

"Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022). We consider many factors when assessing spousal support, including the marriage's length, the health and age of the parties, and their respective earning capacities. *See* Iowa Code § 598.21A(1)(a)–(j). "While the length of the marriage is an important consideration in awarding traditional support, it is not the only consideration under our statutory framework." *Mills*, 983 N.W.2d at 70. Indeed, we may also consider "a spouse's disability suffered during the parties' marriage." *Id.* at 71. At bottom, the goal of spousal support "is to do equity." *Id.* (cleaned up).

To begin, the district court heard some conflicting evidence about Suzann's financial needs. She testified during trial that she anticipated needing "at least $350" in monthly spousal support, but the parties' joint pretrial stipulation stated that she sought $650 per month. Robert seizes on this discrepancy, urging us to forgo spousal support entirely or reduce it to $350 to match Suzann's testimony. And he also argues that he has reached his earning capacity and anticipates leaving the workforce soon due to his health, which renders an award of any amount unduly burdensome. Suzann counters that Robert was in good health at the time of trial; works full time; has a significantly higher income and earning capacity; and bought a home he couldn't afford after the parties separated, which unreasonably inflated his monthly expenses.

Balancing the relevant factors, the parties were married over twenty years. While they leave the marriage with relatively equal assets, Robert earns—and will continue to earn—far more than Suzann's disability-based fixed income. During trial, Robert generally alluded to experiencing lingering back pain, but he provided no testimony or other evidence suggesting he would not be able to work full time for the foreseeable future. So we see no basis in the record to disturb the district court's findings that a traditional spousal support award is equitable at this time and that Robert leaves the marriage in a superior financial position to Suzann.

As for the amount, Suzann acknowledges her testimony but points us to her financial affidavit, which shows roughly $1900 in monthly expenses. She urges that the district court considered her fixed income of $1039 per month after her son becomes an adult and correctly found that $350 per month was insufficient to meet her needs. Indeed, even the $650 support award does not close the gap between

her income and current expenses. On this point, the court recognized that neither party would "be able to live the lifestyle they enjoyed while living together." But considering the length of the marriage, Suzann's disability, and Robert's "significantly higher" monthly income, the court found a $650 traditional support award equitable.

We agree. Robert's monthly expenses total $2622.13, which included $500 for "miscellaneous" expenses beyond the itemized necessities. At the time of trial, Robert earned $3300.25 per month before taxes. So like Suzann, Robert will not be able to enjoy his same marital lifestyle going forward. But we do not find the amount to be unreasonable or excessive, particularly in light of the length of their marriage and Suzann's diminished income due to her disability. *See id.* at 68 (noting the purpose of traditional spousal support "is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued" and that "considering the spouse's disability when determining a spousal support award helps ensure that resulting financial inequities may be remedied" (cleaned up)). We thus affirm the traditional spousal support award.

### IV. Appellate Attorney Fees

Finally, Suzann requests $3000 in appellate attorney fees. And she supports her request with an itemized statement "of the attorney's time expended, tasks performed, an hourly rate" showing that she incurred more than $9000 in appellate fees. *In re Marriage of Samuels da Fonseca Silva*, 15 N.W.3d 801, 808 (Iowa Ct. App. 2024). We have discretion whether to award appellate attorney fees in an appeal of a dissolution decree. *See id.* In exercising that discretion, "we consider the needs of the party seeking the award, the ability of the other party

to pay, and the relative merits of the appeal." *Id.* (cleaned up). Here, Suzann's requested amount is reasonable, she successfully defended the decree on both appealed issues, and she has significantly less ability to pay. We thus award Suzann $3000 in appellate attorney fees.

**AFFIRMED.**