# IN THE COURT OF APPEALS OF IOWA

No. 19-1592
Filed May 13, 2020

**DANIEL JAY TALLMAN,**
        Plaintiff-Appellant,

**vs.**

**VALARIE ANN LEVY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Guthrie County, Richard B. Clogg,

Judge.


        A father appeals the district court order establishing child custody, physical

care, and support for his child.  **AFFIRMED AS MODIFIED AND REMANDED.**


        Jessica L. Morton of Bruner, Bruner, Reinhart & Morton, LLP, Carroll, for

appellant.

        Joseph W. Fernandez of Fernandez Law Firm, West Des Moines, for

appellee.


        Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

Daniel Tallman appeals provisions of the court order focused on custody and child support for his and Valarie Levy's child, E.G.T. He contends their informal joint physical care schedule should have continued and the child support award did not account for the dependent social security benefit paid to help support the child. Finally both parties request appellate attorney fees. We agree with Daniel's reasoning, affirm the trial court ruling as modified and remand for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Daniel and Valarie never married; they had E.G.T. in 2009. After the child's birth, the parties resided together with the child for about three years in the home Daniel still owns. When they separated in 2012, they informally agreed to share physical care of E.G.T. under an alternating care schedule. Living only a block apart from each other in Guthrie Center helped with the plan. Valarie cared for the child every Sunday and Monday; Daniel took every Tuesday and Wednesday; and they alternated every Thursday, Friday, and Saturday.

By way of background, at trial, Valarie was thirty-one years old and Daniel was forty-one years old. Their child was ten years old. Over eighteen years ago, after an injury on the job, Daniel applied and received social security disability payments. It is his primary income source, with annual income of $13,260.00.[1] His disability does not limit to his ability to care for his child. Having achieved two

---

[1] Daniel works odd jobs for family members. Because of a car accident, Daniel had previous payments from an annuity and entitlement to a future lump sum that is not relevant to this appeal.

associate degrees (liberal arts and administrative assistant), Valarie worked a series of temp-to-hire jobs in the past in various industries but, at the time of trial, operated an in-home daycare arrangement for one seven-year-old child. Valarie earned $2693.50 in 2018. Based on Daniel's disability, the government allotted E.G.T. dependent social security benefit payments of $545.00 each month. When the parties lived together, each monthly payment went into Valarie's bank account. After separating, the dependent social security benefit deposit continued as previously designated. The parents never established a child support obligation. As with the care plan, they informally agreed to split the child's expenses.

By all accounts, the child is healthy, active, and doing well educationally. In reviewing an exhibit showing text messages over almost four years, the child experienced activities with each parent, the parents supported each other, they communicated about various topics related to the child, and they mainly agreed on parenting. As an additional benefit, Daniel's nearby family members have strong relationships with the child. Both parents were involved in the child's day-to-day care, but Daniel conceded that Valarie carried primary responsibility over the child's medical treatments. And Valarie criticized Daniel's lack of concern over the child's health. Yet the overall picture reflected a complementary arrangement that allowed the child extended contact with each parent. The district court characterized each parent as "active" in the care of the child. Noting no mental health, educational, or other problems, the child appeared to thrive under the long-standing schedule.

For many years the co-parenting arrangement worked with few disputes. At trial, Daniel described several conflicts that arose more in relationship to topics

other than the child. For example, Daniel requested law enforcement help when Valarie angrily demanded the child during Daniel's care period because she mistakenly believed he stopped the deposit of the dependent social security monthly payment to her account. That dispute resolved with Valarie leaving alone. Daniel called law enforcement once again to remove Valarie from his property when she angrily demanded the child return to her upon learning that Daniel's girlfriend, Bryann Marsh, had met E.G.T.[2] That incident also resolved with Valarie leaving alone. At trial, Daniel's relative, Julie Tallman, also confirmed Valarie's erratic behavior over the girlfriend issue based on conversations she had with Valarie.

Valarie testified on her own behalf, arguing there were significant communication problems between the parents, the child was afraid of Daniel, and that he called the child derogatory names. Yet other evidence called the allegations into question. Daniel called an Iowa Department of Human Services (DHS) child protection worker, Tammy Dorscher, to testify. A 2018 wellness check came after a report by the child to her school counselor that Valarie shoved Daniel and had also threatened to kill Daniel, his girlfriend, and the child with a gun. After the child reported the incident, Valarie became upset and locked her in the home until the child apologized to Valarie. While the investigation confirmed the child was safe, the report authored by Dorscher identified the child's fear of going on vacation with Valarie because she did not know if her mother would bring her back.

---

[2] Daniel and Valarie informally agreed to not introduce E.G.T. to any potential suitors until a six-month dating period passed. It had not yet been six months when Bryann met the child. Valarie expressed that it was "immoral" for Daniel to date Bryann because she was her "aunt." But Bryann is only Valarie's aunt's friend.

And the child reported not feeling safe at Valarie's home after this incident as well as being sad, mad, and disappointed because of how her mother spoke to her. The family assessment report noted that by the child's report, Valarie called the child names and that the child had no concerns at the father's home. And instead of complaining about Daniel's care, in the phone interview with Dorscher, Valarie admitted that she and Daniel were the "most civil co-parents out there."

Wanting a formalized custody arrangement, in July 2018 Daniel petitioned for joint legal custody and physical care of the child or, in the alternative, joint physical care. Valarie filed a pro se answer requesting sole legal custody and physical care or in the alternative "primary legal custody." On June 7, 2019, the custody case was tried. The district court entered a decree on August 28 and found the parties should share joint custody but granted Valarie physical care of the child. The court awarded Valarie child support of $30 per month and Valarie retained the monthly social security payment for the child's benefit. Daniel appeals.

**II. Scope of Review and Preservation of Error.**

Our review of matters involving child custody and child support is de novo. *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). "[W]e examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations. *In re Marriage of Dean*, 642 N.W.2d 321, 323 (Iowa Ct. App. 2002).

Valarie argues that Daniel failed to preserve error by failing to file a motion to enlarge the court's findings to explain the custodial decision. Valarie asserts that since the district court failed to detail "specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child," Daniel failed to preserve error by not asking for those findings. Iowa Code § 598.41(5)(a) (2018) (directing that if the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child).

We agree that the district court failed to explain the refusal to award joint physical care, but Daniel did not waive his pursuit of that option. Thus, it is not a case in which we can review "the court's resulting reasoning and conclusions rejecting joint physical care," so we are left with our de novo review of the record and what findings the court detailed. *In re Marriage of Ellis*, 705 N.W.2d 96, 102 (Iowa Ct. App. 2005); *see also Evans v. Stanerson*, No. 05-1601, 2006 WL 1230023, at *1 (Iowa Ct. App. Apr. 26, 2006) (deciding that even though court findings and conclusions were not developed to comply with Iowa Code section 598.42(5)(a), the record was adequate for de novo review).

**III. Discussion.**

**A. The Physical-Care Determination.** As with any physical-care question, our primary concern is what is best for the child. *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). The same criteria applies whether parents have never married or if they are dissolving the marriage. *Jacobson v. Gradin*, 490 N.W.2d 79, 80 (Iowa Ct. App.1992). Daniel requested an award of joint physical

care. Key factors to determine whether joint physical care is appropriate "include an overriding interest in stability and continuity, the degree of communication and mutual respect, the degree of discord and conflict prior to dissolution [or breakup], and the extent to which the parties agree on matters involving routine care." *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007). We consider these criteria to determine what arrangement works here to achieve the best interests of this child.

For over seven years under a shared time schedule, E.G.T. moved seamlessly between her parents' homes. Daniel proposed the same schedule continue. Valarie argued for a change, placing physical care with her and establishing a more restrictive visitation schedule for Daniel. She desired flexibility to move with the child, suggesting at the time of trial the new home location might be in the Des Moines area or possibly in a trailer in Jefferson, Iowa. No concrete housing or job was in place at the time of trial. Yet Valarie reasoned these options offered better housing, better paying jobs, and more opportunities for the child. After observing the parents and hearing from various witnesses, mainly supporting Daniel, the district court opined, "The parties have communicated well enough to demonstrate that *joint legal custody* would be in the best interests of the child." (Emphasis added.) Yet, after positively describing each parent, in the next paragraph the court ruled that "*[j]oint physical care* is not in the best interests of the child." (Emphasis added.) Then the district court awarded physical care to Valarie with no further explanation, except to note the mother was "the most consistent parental figure in the child's life." The order switched Daniel's equal

care time to visits on the first and third weekends of every month, three non-consecutive weeks in the summer, and alternating holiday visitation.

The district court observed that these parents "demonstrated the ability to co-parent focusing on the best interest of their child." Their text communications over a four-year span reinforce their exceptional co-parenting skills. While not all communication was positive, overall the text messages focused on the best interests of their child. Even the court confirmed that their disagreements were "short-lived and handled civilly." Here, with no evidence of any negative effect on the child, the status quo schedule offers stability and a continued environment for growth and development. *See Hansen*, 733 N.W.2d at 696 ("[P]ast caretaking patterns likely are a fairly reliable proxy of the intangible qualities such as parental abilities and emotional bonds that are so difficult for courts to ascertain." (citation omitted)).

Under this record, we are left without the benefit of the district court's reasoning for the denial of joint physical care. And if we defer to the district court's credibility determinations, Valarie fares poorly. *See Clinton v. Morrow*, No. 09-0268, 2009 WL 3064200, at *1–2 (Iowa Ct. App. Sept. 17, 2009) (noting that with a "close case," deference was given district court's "very strong credibility findings"). Here the court found Valarie's testimony not credible. The district court listed specific inconsistencies balanced against credible evidence. First, even with years of respectful parent-focused text communications, Valarie characterized the co-parent relationship as not healthy. Next, she asserted that Daniel failed to inform her adequately about the child, again in spite of the detailed text messages about activities, health, and events. Then, unlike her testimony that Daniel was

mentally and physically abusive to her and the child and abused substances, the testimony of the DHS worker confirmed that as recently as 2018, Valarie reported no concerns about Daniel or his parenting to the DHS worker in a phone interview.[3]

Communication difficulties and tension are expected during litigation over the custody and physical care of a child, but the continuity of care before the stress of litigation reveals more about the future. *See Ellis*, 705 N.W.2d at 102–03 (emphasizing the successful ten month shared physical care arrangement, the court favored a joint physical care award despite some failure to communicate during dissolution process); *Hensch*, 902 N.W.2d at 825 (concluding the long-standing care arrangement mitigated in favor of joint physical care where personal conflict did not interfere with their child-rearing). And where the subject of the current communication disputes centered on Daniel's new girlfriend, it is doubtful that tension will exist long term. The reported communication difficulties failed to rise to the level to impact joint physical care. *See In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985) (denial of joint physical care not warranted where parties communicated for the child's sake even with some conflict). Even more than the testimony, the text messages confirm this conclusion.

Based on key factors to consider, joint physical care is preferred here. When we examine the "interest in stability and continuity," a shared physical care schedule approximates the parties' prior equal care arrangement under which the child has thrived. *See Hansen*, 733 N.W.2d at 690. When discussing subjects related to the care and health of this child, the parents historically have

---

[3] Likewise, Valarie made no calls or reports to any authority reporting domestic abuse at the hands of Daniel.

communicated and shown mutual respect. And the conflicts described at trial appear to be more short-term confrontations associated with tensions unrelated to the general upbringing of the child. Under the *Hansen* criteria, the continuity of continuing a joint physical care arrangement is in the best interests of this child. *See id.* at 697–99. For these reasons, we reverse the district court and award the parents joint physical care of E.G.T., consistent with the schedule proposed by Daniel.

**B. The Child Support Determination.** Daniel maintains that his social security disability benefits are income to him. He argues that the trial court erred by calculating a child support obligation that allowed Valarie to retain the child's benefit payment and without providing a credit against his support. Daniel relies on *In re Marriage of Hilmo* to require a revamp of the support obligation. 623 N.W.2d 809, 811–813 (Iowa 2001) (considering child's social security benefit as income to disabled parent for child support purposes but applying it as a credit against the obligation).

The district court calculated a $30 child support obligation after considering Daniel's monthly disability payment of $1363.50 and attributing monthly earnings of $1017.00 to Valarie (less than the minimum wage calculation suggested by Daniel). The order also allowed Valarie to retain the $545.00 dependent social security payment, which was not factored into the child support calculation. Given our ruling on joint physical care, on remand, the district court shall recalculate the appropriate child support obligation and follow the direction of *Hilmo*. *Id.* at 813. Daniel shall receive a credit for any dependent disability benefit retained by Valarie, and the benefit should be factored into Daniel's gross income when

calculating each party's respective child support obligation under the child support guidelines. *See In re Marriage of Hansen*, 465 N.W.2d 906, 910 (Iowa Ct. App. 1990), *abrogated on other grounds by In re Marriage of Dawson*, No. 01-1088, 2002 WL 531532, at *1–2 (Iowa Ct. App. March 27, 2002).

**C. The Appellate Attorney Fee Request.** "In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. After reviewing the relative ability of the parties to pay and the merits of the appeal, we decline to award appellate attorney fees.

**IV. Conclusion.**

Based on the long-standing and historical shared care arrangement used over seven years, we find that an award of joint physical care meets the best interests of E.G.T. We modify to award joint physical care and remand for further proceedings to determine the physical care schedule, with consideration of the previous arrangement, and to establish the child support obligations.

**AFFIRMED AS MODIFIED AND REMANDED.**